PHELPS DODGE CORPORATION, a New York Corp., Appellee,

v.

STATE OF ARIZONA, STATE LAND DEPARTMENT, and Andrew L. Bettwy, State Land Commissioner, Appellants.

No. 75–2354.

United States Court of Appeals, Ninth Circuit.

Feb. 25, 1977.

Rehearing and Rehearing En Banc Denied April 27, 1977.

**1384**

Peter C. Gulatto, Asst. Atty. Gen., argued, Phoenix, Ariz., for appellant.

Newman R. Porter, argued, Evans, Kitchel & Jenckes, Phoenix, Ariz., for appellee.

Before BARNES and WRIGHT, Circuit Judges, and ORRICK, District Judge.[*]

## OPINION

BARNES, Senior Circuit Judge:

This appeal concerns the validity of a reservation of mineral rights by appellant, the State of Arizona ("Arizona"), in certain lands ("Land")[1] within its boundaries. Said Land was initially granted to appellant by the United States as school trust lands under the Arizona Enabling Act, Section 24 of the Act of Congress of June 20, 1910 (36 Stat. 557).[2]

On June 28, 1934, the United States Congress passed the Taylor Grazing Act ("Grazing Act"), 43 U.S.C. § 315 et seq., which authorized, among other things, the exchange of federal land for real property owned by states or private individuals.[3] In 1936, Congress amended Section 28 of the Arizona Enabling Act to permit Arizona to dispose of school trust lands by exchange under such regulations as the Arizona legislature might prescribe. (49 Stat. 1477). In 1945, prior to the enactment of such regulations, Arizona, pursuant to an "equal acre" exchange under the Grazing Act, reconveyed the Land to the United States reserving to itself "all Mineral Deposits and Rights." Arizona received in return certain federal land subject to a mineral reservation in favor of the United States. In 1948, the Arizona legislature enacted the implementing legislation permitting exchanges under the Grazing Act and ratifying all

---

* The Honorable William H. Orrick, Jr., United States District Judge, Northern California, sitting by designation.

1. Specifically, the lands are described as follows:
   1. Township 5 South, Range 25 East, Section 36: All
   2. Township 5 South, Range 26 East, Section 32: All
   3. Township 6 South, Range 25 East, Section 2: Lots 1 and 2, S12 NE/4; SE/4.

2. *See generally,* Dunipace, Arizona's Enabling Act and the transfer of State Lands for Public Purposes, 8 Ariz.L.Rev. 133 (1966).

3. Such exchange of land could be made on either an equal acreage or an equal value basis. 43 U.S.C. § 315g(c).

prior exchanges. Section 11–1212 Arizona Code Annotated of 1939 (Supp.1952) ("§ 11–1212").

In 1969, plaintiff-appellee Phelps Dodge Corporation ("Phelps Dodge") acquired title to the Land from the United States pursuant to a Grazing Act exchange, 43 U.S.C. § 315g(d). The government patent stated that the grant of the Land was subject to Arizona's reservation of mineral rights. In 1971, Phelps Dodge brought an action in Arizona Superior Court to quiet title to the Land, and for an injunction to restrain the appellant from issuing prospecting permits and/or mineral leases thereon. Arizona petitioned to remove the suit, and it was removed, to the United States District Court for the District of Arizona, as the matter in controversy was deemed to arise in part upon a construction of a federal statute. 28 U.S.C. §§ 1331(a) and 1441(b).

The District Court found that:[4] (1) Phelps Dodge was not estopped to challenge the validity of the mineral reservation by Arizona; (2) the 1945 deed of reconveyance from Arizona to the United States was irregular "on its face" and therefore the "antecedent proceedings on which it is founded may be examined"; (3) in an equal acreage exchange under the Grazing Act, 43 U.S.C. § 315g(c), "the State is not authorized or permitted to reserve minerals in the offered lands when the lands are non-mineral in character"; (4) the reservation of mineral rights in the Land by Arizona was void as the Land was non-mineral in character and consequently the deed conveyed those rights to the United States; (5) the United States patent issued to Phelps Dodge operated to convey the mineral rights and hence the plaintiff was entitled to have its title in the Land quieted.

Arizona appeals and raises the following three issues. First, it argues that Phelps Dodge is estopped from asserting the invalidity of the mineral reservation in the deed when Phelps Dodge claims its title to the Land through that very same deed.

Second, Arizona asserts that all land exchanges under the Grazing Act prior to 1948 were approved by the Arizona Legislature by § 11–1212, and hence the mineral reservation was not void under Arizona law. Third, it is argued that if the mineral reservation was void under the Grazing Act or under Arizona law then the whole exchange was void and the Land must therefore belong to Arizona in fee.

I. *Estoppel by Deed.*

The rule of estoppel by deed is explained by the United States Supreme Court in *Gibson v. Lyon,* 115 U.S. 439, 447–448, 6 S.Ct. 129, 133, 29 L.Ed. 440 (1885) wherein it is said that: "[a claimant] certainly cannot be permitted to claim both under and against the same deed; to insist upon its efficacy to confer a benefit and repudiate a burden with which it has qualified it; to affirm a part and reject a part." *See generally,* 31 C.J.S. Estoppel, § 15, pp. 302–305. This court has applied that rule to a situation involving a reservation of mineral rights. *Russell v. Texas Company,* 238 F.2d 636, 640 (9th Cir.) *cert. denied,* 354 U.S. 938, 77 S.Ct. 1400, 1 L.Ed.2d 1537 (1957)—("Where, however, the surface owner claims title to the mineral rights, which his grantor expressly reserved to himself, on the theory that his grantor had no right to make such a reservation, the owner of the surface is estopped from asserting that the mineral rights thereby passed to him in the instrument of conveyance [citations omitted].") The Arizona Supreme Court has applied the rule, citing with approval both *Gibson* and *Russell,* in *Allison v. State,* 101 Ariz. 418, 420 P.2d 289, 292 (1966), where it stated: "Plaintiffs cannot claim under patents from the United States of America without confirming them, nor can they adopt portions which operate in their favor and at the same time repudiate those which are counter or adverse to their interest [citations omitted]. So it has been held under the principle of estoppel by deed, that a grantee, or those claiming under him, can-

---

4. The opinion by Judge Craig is reported in *Phelps Dodge v. State of Arizona, et al.,* 390 F.Supp. 150 (D.Ariz.1975).

not deny the binding authority of a reservation or exception in his deed."

However, an exception to the rule was noted by the United States Supreme Court in cases involving the transfer of land by government officials who act in excess of their statutory authority. In *Burke v. Southern Pacific R.R. Co.*, 234 U.S. 669, 34 S.Ct. 907, 58 L.Ed. 1527 (1914), an adverse claimant sued the railroad company which had received the land in controversy pursuant to a patent from the United States government. That patent contained a clause to the effect that if any of the lands should be found to be mineral, the same would be excluded from the transfer. The railroad contended said clause was contrary to the enabling statute and hence void. The Court held that the rule of estoppel by deed did not apply because the United States Land Department officers who inserted that clause were acting in excess of their authorization and the patentee had no voice in establishing the terms of the patent. The *Burke* exception was followed by the Arizona Supreme Court in *Campbell v. Flying V Cattle Co.*, 25 Ariz. 577, 220 P. 417 (1923). In *Campbell* the state of Arizona sold certain lands to the cattle company subject to a reservation of mineral rights. However, Arizona law at that time did not permit the state to make a mineral reservation in lands sold. The Arizona Supreme Court allowed the cattle company to raise the issue of the invalidity of the mineral reservation and refused to find any estoppel by deed stating:

"Appellants contend further that appellee knew, when its application was filed and its bid accepted, that the certificate of purchase to be issued to it would contain the reservation to which it is now objecting and that in consequence of this fact it is now estopped from denying the validity of such reservation. It may be

true that appellee had such knowledge, *though it is wholly immaterial whether it did or not*, since the law did not authorize the inclusion of such a provision in the certificate; but, even though it did know such to be the practice, it would necessarily be assumed that appellee knew the law also, that it acted upon the theory that the law would be followed, and therefore that a certificate of purchase containing what section 62 required, and nothing more, would be tendered. Such is the effect of the case of *Burke v. S.P.R.R. Co.*, supra, 234 U.S. 669, 34 S.Ct. 907, 58 L.Ed. 1527 in which the Supreme Court of the United States held void a mineral exception in a patent issued to a railroad company, notwithstanding it was expressly agreed by the patentee that such a provision should be effective as one of the terms of the patent." 25 Ariz. at 587–88, 220 P. at 420.

The Arizona Supreme Court followed the *Campbell* case in *State v. Drew*, 83 Ariz. 91, 316 P.2d 1108, 1109 (1957), and indirectly referred to the holdings of those cases in *Allison, supra*, 101 Ariz. at 425, 420 P.2d at 296.[5]

■ Here, Arizona, while raising estoppel by deed, fails to adequately distinguish the present situation from the *Burke-Campbell* exception to that rule.

Akin to the estoppel by deed issue, appellant raises the old rule of public land law that a patent regular on its face and issued by the land department within its authorized jurisdiction is conclusive and is only subject to collateral attack on grounds that the patent is completely void. *St. Louis Smelting and Refining Co. v. Kemp*, 104 U.S. 636, 640–47, 26 L.Ed. 875 (1882); *United States v. Price*, 111 F.2d 206, 208 (10th Cir. 1940). The district court held, and we agree, that the deed of reconveyance between Arizona and the United States was irregular on its

---

5. While appellant cites to *Allison* as reversing the earlier *Campbell* and *Drew* decisions, such interpretation definitely misreads that case. In *Allison*, which involved rights of way for highways and not mineral reservations, the Arizona Supreme Court recognized "a line of cases which hold that a reservation inserted in a

patent by an administrative officer without statutory authority is void." However, the Court held that the patents in *Allison* did not fall within the rule established in that earlier line of cases, as the officer there was clearly authorized to reserve rights of way for highways in the land.

face as it contained a mineral reservation in land that was not mineral in character and also that the reservation was made at a time when any such reservation was *per se* beyond the powers of the officers of the state of Arizona (*see infra*). Thus, an examination of the antecedent proceedings was warranted and permissible.

## II. *Validity of Arizona's Mineral Reservation.*

### A. *Statutory Scheme.*

By the terms of the 1936 amendment to Section 28 of the Arizona Enabling Act, school trust lands held by Arizona (including the Land herein) could be exchanged pursuant to the regulations enacted by the Arizona legislature, provided that the exchanges were made "only as authorized by Acts of Congress and regulations thereunder." Thus, the validity of Arizona's mineral reservation in the Land must be scrutinized under *both* federal and State laws.

### B. *Federal Law.*

The Taylor Grazing Act, under which the exchanges of the Land were made, provides in part:

> "When an exchange is based on lands of equal acreage and the selected lands are mineral in character, the patent thereto shall contain a reservation of all minerals to the United States; and in making exchanges of equal acreage the Secretary of the Interior is authorized to accept title to offered lands which are mineral in character, with a mineral reservation to the State." 43 U.S.C. § 315g(c).

The district court held that Arizona was not permitted in an equal acre exchange under the Grazing Act to reserve minerals in lands which were non-mineral in character at the time of the exchange. 390 F.Supp. at 153. No cases are cited for that proposition and indeed the question appears to be one of first impression for the courts. After extensive review, we note that the legislative history of the Grazing Act does not contain any specific reference to this issue.

It is noted, however, that the Grazing Act does distinguish between mineral reservations in equal value exchanges and reservations in equal acre exchanges. For the latter, 43 U.S.C. § 315g(c), quoted in relevant part above, contains a specific reference to lands "which are mineral in character." Conversely, 43 U.S.C. § 315g(d) states in relevant part that "either party to an exchange based upon equal value under this section may make reservations of minerals. . . ." While the language of subsection (c) is not phrased in terms of requiring that the lands be mineral for a valid reservation in equal acre exchanges, a comparison of the language used in subsections (c) and (d) does support such an interpretation. Under subsection (c) (equal acre exchanges), the statutory authorization for the acceptance by the Secretary of the Interior of offered lands with a mineral reservation to the state is specifically provided only for lands which are mineral in character. No such qualification is provided for equal value exchanges of land under subsection (d).

### C. *State Law.*

Under Arizona law at the time of the exchange between Arizona and the United States, the State of Arizona could not reserve any mineral rights in the lands sold by it. Opinions, Arizona Attorney General, No. 58–14 (1958). If the land was mineral in character it could only be leased; if it was non-mineral it could be sold but without any reservation in the conveyance. *Campbell, supra,* 25 Ariz. 577, 220 P. at 419; *Drew, supra,* 83 Ariz. 91, 316 P.2d at 1109. While Arizona case and statutory law did not mention exchanges of land, no evidence has been offered that exchanges would not have been included in that rule.

Appellant argues that, despite any prior invalidity of the mineral reservation, in 1948 the Arizona legislature in its implementing legislation for the Grazing Act confirmed and ratified all previous Grazing Act exchanges inclusive of their mineral reservations. Section 11–1212 provided in part: "All exchanges for federal land heretofore made by the commissioner and selection board, under the provisions of the Tay-

lor grazing act, as amended, section 28 of the enabling act, as amended, or any other act of Congress applicable thereto, are hereby confirmed and ratified." However, the statutory language does not indicate that the ratification was meant to extend further than the exchanges themselves to include possible concomitant, but unlawful reservations. While no direct evidence of the legislative intent for § 11–1212 could be found, it is noted that § 11–1212 also contained the provision that: "Such exchanges shall be made in the same manner and under the same rules and regulations as required in the selection of lands under the provisions of the enabling act, as amended." By requiring the exchanges to be made in the "same manner and under the same rules and regulations" as provided in the enabling act, the legislature indirectly reconfirmed the existing law under that act which included the holding of the *Campbell* case. It is highly doubtful that the intent of the Arizona legislature extended to include the ratifying of unlawful reservations in the exchanges.[6] This interpretation is strengthened by the fact that it was not until 1954 that the Arizona legislature provided any authority for the State Land Commissioner to make mineral reservations in lands conveyed, Arizona Revised Statutes, § 37–231, and it was not until 1968 that the legislature authorized the Commissioner to reserve minerals in Grazing Act exchanges, Arizona Revised Statutes § 37–722.

### D. *Invalidity.*

■ At trial, it was proven that the Land was not "mineral in character" at the time of the exchange between Arizona and the United States under the test announced by the United States Supreme Court in *Diamond Coal and Coke Co. v. United States*, 233 U.S. 236, 240, 34 S.Ct. 507, 58 L.Ed. 936 (1914). Hence, Arizona's reservation of mineral rights was not consistent with the

provisions of the Grazing Act. Likewise, the reservation was contrary to Arizona state law at the time it was made. The subsequent confirmation of prior Grazing Act exchanges by the Arizona legislature failed to specifically ratify it. Consequently, the mineral reservation was invalid under both federal and state law.

### III. *Effect of the Invalidity.*

■ Appellant argues that if the mineral reservation is invalid, then the entire exchange is void for two reasons: (1) the exchange fails for lack of consideration, and/or (2) the Secretary of the Interior exceeded his authority in accepting the Land. Appellant's contention of a lack of consideration misconstrues the nature of the transaction. The exchange of federal land for state land under the Grazing Act is not based upon contract law but rather upon the specific provisions of the statute authorizing the exchange. Under the statute there are two ways in which the exchange can occur, on either an equal acre or an equal value basis. That an exchange under the former method could occur with a reservation in favor of only one of the parties is clearly envisioned by the Grazing Act. In such case, the presence or lack of consideration is not a relevant aspect as the terms of the exchange are dictated by the statute and are not subject to negotiation between the parties. Even if one were to accept the notion that the consideration theory is applicable to the exchange, Arizona's reservation of mineral rights in land which was not mineral in character at the time of the exchange would be worthless. As noted above, the reservation was void under Arizona law.

■ As for the contention that the Secretary of the Interior's acceptance of an invalid mineral reservation nullified the entire transfer, the United States Supreme Court has rejected that argument, in *Burke, supra*, 234 U.S. at 698–710, 34 S.Ct. 907, and

---

**6.** It is also noted here that, because the mineral reservation was void when made, the mineral rights would have already passed to the United States in the exchange. *See* in this regard, Opinions, Arizona Attorney General, No. 58–14

(1958). Consequently, even if the subsequent ratification of Grazing Act exchanges did include mineral reservations contained therein, such action would have come too late.

held instead that an invalid mineral reservation can be determined to be void while, at the same time, upholding the validity of the patent itself. *Accord, Drew, supra,* 83 Ariz. 91, 316 P.2d at 1109.

*Conclusion.*

Arizona's mineral reservation in the Land was contrary to both state and federal law at the time it was made. Phelps Dodge is not prevented from challenging the validity of the reservation under either estoppel by deed or the rule as to the inherent conclusiveness of issued patents. The decision of the district court below is affirmed.