**CHEVRON U.S.A., INC., a California corporation, Petitioner,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

No. 89–70194.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 4, 1990.

Decided July 11, 1990.

As Amended Sept. 5, 1990.

Jeffrey J. Truskey, Chevron Corp., San Francisco, Cal., for petitioner.

Ashley Doherty, Environmental & Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., David M. Gravallese, Office of General Counsel, U.S.E.P.A., Washington, D.C., for respondent.

Before WRIGHT, WALLACE and KOZINSKI, Circuit Judges.

WALLACE, Circuit Judge:

Chevron U.S.A. Inc. (Chevron) petitions for review of a final order of the United States Environmental Protection Agency (EPA) establishing upper limits for the discharge of water-borne oil and grease from offshore oil facilities operated by Chevron. The EPA acted pursuant to sections 301, 304 and 402 of the Clean Water Act (Act), 33 U.S.C. §§ 1311, 1314, 1342. Chevron brings the petition pursuant to 33 U.S.C. § 1369(b)(1). However, we hold that the petition is time-barred under that section; therefore, we deny the petition.

I

On August 8, 1979, the EPA issued a National Pollutant Discharge Elimination System (NPDES) permit to Chevron to operate certain oil extraction facilities in the Santa Barbara Channel. Pursuant to the Act, the permit limited discharge of oil and grease from the facility to a maximum daily level of 72 mg/l. In 1982, pursuant to the NPDES permit, Chevron began production of oil and gas at its Platform Grace facility. Soon afterward, Chevron observed unexpectedly high levels of oil and grease discharge. After studying the problem, Chevron concluded that certain aspects of oil and grease discharge had not been included in prior estimations of ex-

pected pollutant release. Chevron determined that oil discharge came in two forms: first, oil mixed with water, and second, oil dissolved in water. The former component was well-known, easily measured, and relatively susceptible to cleanup technologies. The presence of oil pollutants dissolved in the water was not recognized at the time the permit was issued, and such pollutants are not readily observed or removed.

Without requesting a modification of the pollutant limit, Chevron successfully applied for a renewal of the Platform Grace permit on December 29, 1983. The renewed permit expired on March 31, 1984, but continued in force absent EPA action to revoke it. During this time pollutant discharge levels continued to exceed the 72 mg/l level. Chevron experimented unsuccessfully with methods of controlling the discharge. Chevron also informally discussed the possibility of regulatory relief with the EPA. However, Chevron never formally requested an action on the part of the EPA, nor in any other way initiated proceedings which would have required agency action.

On December 29, 1988, the government filed a civil enforcement action against Chevron, alleging, among other violations, discharge of pollutant in excess of the permitted level from Platform Grace. Chevron then filed this petition for review on April 26, 1989, challenging the NPDES permit.

## II

The relevant statute provided:

Review of the [EPA's] action ... in promulgating any effluent standard, prohibition, or pretreatment standard ... [and] in issuing or denying any permit ..., may be had by any interested person in the Circuit Court of Appeals of the United States for the Federal judicial district in which such person resides or transacts such business upon application by such person. *Any such application shall be made within ninety days from the date of such determination, approval, promulgation, issuance or denial, or after such date only if such application is based solely on grounds which arose after such ninetieth day.*

33 U.S.C. § 1369(b)(1) (emphasis added) (since amended to provide for a 120-day rather than a 90-day limit). The EPA contends that Chevron's application is time-barred under this provision.

Clearly, Chevron did not bring its petition within 90 days of the issuance of the challenged permit, as stated in section 1369. However, Chevron argues that it is asserting the challenge on the basis of "grounds which arose after [the] ninetieth day." The EPA concedes that the evidence before this court indicates that the dissolved oil phenomenon, if any, on which Chevron bases the challenge was discovered in 1982, more than 90 days after the issuance of the permit. However, the EPA argues that we should construe the statute to require that challenges based on new grounds be made within 90 days of the discovery of the new grounds. Since Chevron admits that it recognized the dissolved oil problem as early as 1982, its petition filed in 1989 would, under the EPA's view of the law, be untimely.

We are unable to conclude that the statute provides the 90-day limitation urged by the EPA. The relevant language expressly provides that the 90-day limit applies *unless* new grounds are discovered. When new grounds are alleged, challenges may be brought "after such date" (i.e., after 90 days after issuance); the statute does not then state a limitation period applicable to the exception. The legislative history similarly omits any such limitation:

The Committee recognizes that it would not be in the public interest to measure for all time the adequacy of a promulgation of any standard requirement or regulation by the information available at the time of such promulgation.... The judicial review section, therefore, provides that any person may challenge any requirement after the date of promulgation *whenever it is alleged that significant new information has become available.*

S.Rep. No. 414, 92nd Cong., 1st Sess. 85 (1971), *reprinted in* 1972 U.S.Code Cong. & Admin.News 3668, 3751.

We conclude that the only fair reading of the statute is that Congress did not provide a statute of limitations for bringing challenges based on grounds arising after the expiration of the 90–day limit. Based upon this, Chevron argues that, if no limitations period is provided, we should accept challenges filed at any time after the 90–day period so long as new evidence is alleged. Ordinarily, however, when courts are faced with federal statutes which do not specify a limitations period, they will apply the period set forth in the most nearly analogous state or federal law. *Reed v. United Transportation Union,* 488 U.S. 319, 109 S.Ct. 621, 625–26, 102 L.Ed.2d 665 (1989) (*Reed*); *Del Costello v. Teamsters,* 462 U.S. 151, 171–72, 103 S.Ct. 2281, 2294–95, 76 L.Ed.2d 476 (1983); *Occidental Life Insurance Co. v. EEOC,* 432 U.S. 355, 367, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977); *Sierra Club v. Chevron U.S.A., Inc.,* 834 F.2d 1517, 1520–22 (9th Cir.1987) (*Sierra Club*); 2 Moore's Federal Practice § 3.08[2]. Although under certain circumstances we may conclude that no statute of limitations should apply, *see Sierra Club,* 834 F.2d at 1520, we refuse to do so here. The interest in administrative finality requires that some limitation be placed on the ability to challenge EPA actions based on new evidence. Therefore, the only remaining issue is whether we should borrow a limitations period from the most nearly applicable state or federal law.

We perceive some tension in precedents controlling our decision as to the applicable statute of limitations. *Compare Reed,* 109 S.Ct. at 625 (recognizing a general rule that state law is to be applied but stating that "[w]e decline to borrow a state statute of limitations only when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking") (internal quotations omitted), *with Sierra Club,* 834 F.2d at 1521 ("[A] state statute of limitations should only be applied in the absence of a relevant federal statute of limitations. A further caveat to this general rule is that a state statute of limitations should not be applied where its application would frustrate federal policy."). However, we will not be required to decide to what extent the Supreme Court's discussion in *Reed* is inconsistent with our earlier formulation in *Sierra Club* if we need not decide whether state or federal law provides the appropriate analogy, i.e., if Chevron's petition is barred under either limitations provision.

The most analogous federal statute of limitations is the one contained in the statute itself, but expressly made applicable only to suits not based on new information. Were we to apply federal law in determining the applicable statute of limitations, we would borrow this 90–day limit. Such an application is consistent with the legislative intent to "maintain the integrity of the time sequences provided throughout the Act." S.Rep. No. 414, 92nd Cong., 1st Sess. 85 (1971), *reprinted in* 1972 U.S.Code Cong. & Admin.News 3668, 3751.

Alternatively, under state law the most relevant provision is California's general three-year statute of limitations. Cal.Code Civ.Proc. § 338 (West Supp.1990) (applicable, among other things, to California's clean water act, the Porter–Cologne Act, Cal. Water Code § 13000 *et seq.*). By Chevron's own admission, the challenge to the 1979 NPDES permit based on the dissolved oil phenomenon accrued no later than sometime in 1982, when Chevron first became aware of the problem. Thus, whether we adopt the 90–day limitation suggested by federal law or the three-year limitation suggested by California law, Chevron's petition—coming as it does some six years after accrual—is time-barred.

Chevron argues in the alternative that the "new grounds" giving rise to the petition is the enforcement action filed in 1988. However, we cannot conclude that such a circumstance provides the new grounds envisioned by the statute. Admittedly, the enforcement action is no doubt the precipitating event leading to the present peti-

tion, in the sense that but for the enforcement Chevron would not have challenged the permit. However, the statute provides that the challenge must be *based on* the new grounds. 33 U.S.C. § 1369(b)(1). While the enforcement action may have triggered the bringing of the petition, the enforcement action does not provide a basis for challenging the permit. Rather, that basis is provided by the discovery of the dissolved oil phenomenon. The statute of limitations began to run at that point, and has long since expired.

PETITION DENIED.