UOP, a General Partnership,
Plaintiff–Appellee,

v.

UNITED STATES of America; Bruce Babbitt, Secretary of the Interior, Defendants–Appellants.

No. 95–15889.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 16, 1996.

Decided Oct. 31, 1996.

Joan M. Pepin, United States Department of Justice, Washington, DC, for defendant-appellant.

Ralph B. Sievwright and N. Douglas Grimwood, Twitty, Sievwright & Mills, Phoenix, AZ, for plaintiff-appellee.

Before: CANBY and FERNANDEZ, Circuit Judges, and KING, District Judge.*

FERNANDEZ, Circuit Judge:

The United States and Bruce Babbitt, Secretary of the Interior,[1] appeal from the district court's judgment which reversed a decision of the Interior Board of Land Appeals (IBLA). The Board had upheld a decision of the Bureau of Land Management, which had declared the mining claims of UOP, Inc. null and void ab initio because the public records showed that title to the mineral rights in the subject lands are in the State of Arizona. We affirm in part, vacate in part, and remand.

## BACKGROUND

Pursuant to the Enabling Act[2] that authorized Arizona statehood in 1910, the parcels of land in question here were conveyed to the State of Arizona in the mid–1910s. Arizona later transferred those parcels of land to the United States in an equal acre exchange pursuant to the Taylor Grazing Act.[3] It did so in two reconveyances identified as Phoenix 080687 (in 1947) and Phoenix 080893 (in 1948). Under the Taylor Grazing Act, mineral rights in lands which are "mineral in character" could be retained by the State, and in this instance, Arizona purported to do just that. At the time of the transfers, both sets of parcels were identified as having little value "except for grazing."[4] However, in a

---

* George H. King, United States District Judge for the Central District of California, sitting by designation.

1. Collectively referred to as the United States.

2. Enabling Act of 1910, Pub.L. No. 61–219, 36 Stat. 557.

3. Pub.L. No. 73–482, 48 Stat. 1269 (1934), codified as amended at 43 U.S.C. §§ 315–315r; Pub.L. No. 74–827, 49 Stat.1976 (1936), codified as 43 U.S.C. § 315g, repealed Pub.L. No. 94–579, 90 Stat. 2792 (1976).

4. In 1943, the Land Classification Division said that 080687 did not "appear to have any value except for grazing" and the principal value of

letter dated January 23, 1990, Arizona's Deputy Land Commissioner stated that "These lands were under oil and gas lease in 1947 at the time the exchange was made; they have been under oil and gas or zeolite mineral leases continuously since that time."

In 1982, Union Carbide, the predecessor in interest of UOP, entered into a mineral lease of the land with the State of Arizona. In 1989, Union Carbide filed 39 placer mining claims on the land with the BLM, and in February of 1990, it quitclaimed its interests to UOP.

In November, 1990, the BLM declared that UOP's claims were null and void because the United States had no mineral rights in the land—the rights were retained by Arizona in the 1947 and 1948 land exchange. The BLM stated that:

> The BLM public records show the lands were not open to location of mining claims at the time of location. The United States acquired the surface estate of the subject lands from the State of Arizona by Deeds of Reconveyance dated April 18, 1947 and September 3, 1948 via two land exchanges made under Section 8 of the Taylor Grazing Act. The deeds contain reservations of all minerals to the State of Arizona.

> The land has been reconveyed to the United States and the reconveyance reserved the minerals to the grantor; the United States has no mineral ownership. Therefore, the lands are not subject to location under the General Mining Laws.

The IBLA affirmed. In doing so, it reasoned that, because the mineral reservation was not challenged when the exchange was originally made, the doctrine of administrative finality applied and the mineral rights were retained by Arizona. It concluded, in the alternative, that procedural differences between this case and earlier cases also exempted it from the need to decide whether the land was mineral in character.

UOP filed suit and sought review of the IBLA decision under the Administrative Procedure Act. 5 U.S.C. §§ 551–52. UOP also included a quiet title claim against Arizona, but the State asserted its Eleventh Amendment immunity and sought dismissal of the action as to it. The district court then entered an order granting Arizona's motion to dismiss. At the same time it granted summary judgment in favor of UOP.

The district court held that the IBLA had acted arbitrarily and capriciously when it concluded that the administrative record was inconclusive as to whether the land was mineral in character at the time of the exchange, because evidence in the record described the land as primarily valuable for grazing. The district court also held that the IBLA had acted arbitrarily and capriciously when it invoked the doctrine of administrative finality and refused to "reopen" the terms of the land exchanges because, the court said, "[t]he doctrine of administrative finality cannot give life to a void reservation in a deed." It therefore held that Arizona's mineral reservations were void and ordered the Department of the Interior to "conform its records to show that the mineral rights to the subject lands ... are and have been in the United States since the conveyance of the land from the State of Arizona in the exchanges in question, and that subject lands were open to location under the General Mining Law when Plaintiff located its mining claims." This appeal followed.

## JURISDICTION AND STANDARDS OF REVIEW

■ We review the district court's grant of summary judgment de novo. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996); *Jesinger v. Nevada Federal Credit Union*, 24 F.3d 1127, 1130 (9th Cir.1994). We review the ILBA's decision under the APA and overturn that decision only if it was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 414, 91 S.Ct. 814, 822, 28 L.Ed.2d 136 (1971). We must determine whether the agency based its decision on "a consideration of the relevant factors and whether there has been

080893 was "for limited grazing uses and water-    shed protection use."

a clear error of judgment." *Id.* at 416, 91 S.Ct. at 824.

■ A district court's decision concerning joinder pursuant to Fed.R.Civ.P. 19(b) is generally reviewed for an abuse of discretion. *United States ex rel. Morongo Band of Mission Indians v. Rose,* 34 F.3d 901, 907 (9th Cir.1994). In this case, however, the United States did not raise the joinder issue in the district court, and the district court did not rule on the issue. Nevertheless, we must consider the claim. *See Pit River Home & Agricultural Co-op. Ass'n v. United States,* 30 F.3d 1088, 1099 (9th Cir.1994) (this court can consider whether a party not joined was indispensable to the litigation although the district court did not rule on the issue); *CP Nat'l Corp. v. Bonneville Power Admin.,* 928 F.2d 905, 911 (9th Cir.1991) ("The absence of 'necessary' parties may be raised by reviewing courts *sua sponte.* The issue can be properly raised at any stage in the proceeding."); *Boles v. Greeneville Hous. Auth.,* 468 F.2d 476, 479 & n. 4 (6th Cir.1972) (court raised indispensable party question on its own motion, even though Rule 19 was neither litigated at the trial level nor briefed on appeal); *Washington v. United States,* 87 F.2d 421, 427 (9th Cir.1936) (we must decide whether the failure to join a party is a fatal error); *see also Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 111, 88 S.Ct. 733, 738–39, 19 L.Ed.2d 936 (1968) ("when necessary ... a court of appeals should, on its own initiative, take steps to protect the absent party, who of course had no opportunity to plead and prove his interest below."); *Pit River,* 30 F.3d at 1099 (same). Whether joinder was mandated under Rule 19(b) is a question of law reviewed de novo. *See Pit River,* 30 F.3d at 1099–1100; *cf. United States v. Yacoubian,* 24 F.3d 1, 3 (9th Cir.1994) (questions of law are reviewed de novo).

■ The United States's statute of limitations claim is also raised for the first time on appeal. However, the statute of limitations in 28 U.S.C. § 2401(a) is jurisdictional. *See Sisseton–Wahpeton Sioux Tribe v. United States,* 895 F.2d 588, 592 (9th Cir.), *cert. denied,* 498 U.S. 824, 111 S.Ct. 75, 112 L.Ed.2d 48 (1990) ("The plaintiff's failure to sue within the period of limitations is not simply a waivable defense; it deprives the court of jurisdiction to entertain the action."); *see also Big Spring v. United States,* 767 F.2d 614, 616 (9th Cir.1985) ("Section 2401(a), if it applies, is jurisdictional."), *cert. denied,* 476 U.S. 1181, 106 S.Ct. 2914, 91 L.Ed.2d 543 (1986); *Loring v. United States,* 610 F.2d 649, 650 (9th Cir.1979) (Section 2401(a) is jurisdictional). Therefore, it may not be waived and must be reviewed de novo. *See Pit River,* 30 F.3d at 1100 (jurisdictional defect may be asserted by parties at any time or by the court *sua sponte* ).

## DISCUSSION

The United States contends that the district court exceeded the proper scope of review when it reviewed the IBLA's decision because it assessed the merits of the underlying claims that the IBLA had not reached. The United States also contends that the district court erred because the IBLA's determination of administrative finality was not arbitrary and capricious, its alternative holding was legally supported, and Arizona was a necessary and indispensable party to any determination by the district court regarding who owns the mineral rights in the land.

### A. *Administrative Finality*

■ The IBLA's reliance on administrative finality was not justified. Administrative finality is the administrative version of res judicata. *Taylor v. Heckler,* 765 F.2d 872, 876 (9th Cir.1985); *see also Chevron U.S.A., Inc. v. EPA,* 908 F.2d 468, 470 (9th Cir.1990) ("The interest in administrative finality requires that some limitation be placed on the ability to challenge [agency] actions based on new evidence."). It bars challenges to administrative decisions after the time for making a challenge has expired. *Id.*

In this case, the IBLA said that the administrative action of receiving the deed from Arizona had been properly terminated almost fifty years before UOP initiated the present challenge. The proceeding had become final because the proper time to challenge it had long since passed. It cited authority for the proposition that when it has acted in an

adjudicative capacity, later reexamination of an issue will not be permitted absent compelling legal or equitable reasons. *See Lloyd D. Hayes,* 108 IBLA 189, 192 (1989).

If UOP were now challenging the results of that administrative proceeding which took place in 1947, that *would* be disquieting because administrative proceedings, like all others, must reach a condition of stasis at some point. However, UOP is not making *that* challenge. It merely asserts that the land was not mineral in character at the time of the exchange. It recognizes that "[d]eterminations by the BLM and the IBLA must be upheld unless arbitrary, capricious, an abuse of discretion, or not in accordance with the law." *Gilmore v. Lujan,* 947 F.2d 1409, 1411 (9th Cir.1991) (citations omitted). But, it argues, the IBLA's mischaracterization of the issues shows that the decision was improper. We agree.

At the time of the exchanges, the BLM did not decide, much less adjudicate, the issue of whether the land it received from Arizona was or was not mineral in character. Indeed, the IBLA suggested that the administrative regulations indicated that the agency was not required to make the finding at that time. *See* 43 CFR 147.7 (1938);[5] *see also State Exchange Applications Under the Provisions of Section 8 of the Taylor Grazing Act,* 56 I.D. 403, 403–404 (1936). Of course, if that is what the regulation meant, it is problematic; we effectively rejected that theory when we decided *Phelps Dodge v. Arizona,* 548 F.2d 1383, 1387 (9th Cir.), *cert. denied,* 434 U.S. 859, 98 S.Ct. 184, 54 L.Ed.2d 132 (1977).

In *Phelps Dodge,* we considered the validity of Arizona's reservation of mineral rights in land conveyed in an exchange to the United States in 1945 under the Taylor Grazing Act. We considered that issue in the context of a quiet title action between Phelps Dodge, which had acquired the United States' interest in the land, and the State of Arizona. Arizona had removed the action to federal court. *Id.* at 1384–85. We found that the terms of the 1936 amendment to Section 28 of the Arizona Enabling Act allowed Arizona

to exchange trust lands only pursuant to the regulations enacted by the Arizona legislature and "only as authorized by Acts of Congress and regulations thereunder." *Id.* at 1387. We then held that Arizona lacked authority under either federal or state law to reserve minerals in land that was nonmineral in character at the time of the exchange. *Id.* at 1387–88. "Consequently, the mineral reservation was invalid under both federal and state law." *Id.* at 1388. The attempted reservation by Arizona was void and Phelps Dodge had title to the mineral rights in the land. *Id.* at 1388.

■ *Phelps Dodge* makes it clear that a mineral reservation can be void even though the exchange itself is upheld. *Id.* at 1388–89. Therefore, the IBLA was incorrect when it asserted that a challenge to the mineral reservation is a challenge to the exchange itself or that it attacks the prior proceeding. Even if the exchange itself cannot be challenged, a decision that the United States owns the whole of the property, including its mineral deposits, is not precluded. As we indicated in *Phelps Dodge,* "an invalid mineral reservation can be determined to be void while, at the same time," the remainder of the transfer is valid. *Id.* The IBLA erred when it decided to the contrary.

B. *The Mineral Character of the Subject Land*

■ The IBLA also abused its discretion when it failed to administratively determine whether the subject lands were mineral in character at the time of the exchange. Because the doctrine of administrative finality was not dispositive, the IBLA could only decide whether UOP's claim was valid by determining whether, in its view, the mineral reservation was viable or void. That determination required a finding of whether the subject land was mineral in character at the time of the exchange. The IBLA did not make that inquiry; instead it concluded that "the record fails to disclose that the lands were found to be either mineral or nonmineral in character." It concluded that it need

---

5. The regulation did not actually say that; it said that there is no need to determine the mineral

character of the lands that the United States was conveying to the state.

not now determine whether the subject land was mineral in character. Again, it relied upon the regulations which existed at the time of the exchange and suggested that they did not require the Secretary to make a determination about the mineral character of land, if the state had applied to receive only surface rights from the United States. Again, the IBLA's reasoning must fail because it is directly contrary to *Phelps Dodge.*

However, Arizona argues that *Phelps Dodge* is no longer viable precedent for three reasons. First, Arizona relies on a later opinion of the Arizona Supreme Court, which declared that earlier exchanges, which were not legal when made, would not be retroactively invalidated. *See Fain Land & Cattle Co. v. Hassell,* 163 Ariz. 587, 790 P.2d 242, 252–53 (1990). Arizona argues that because *Phelps Dodge* relied in part on the invalidity of the exchange under state law, its decision is now questionable. But *Phelps Dodge* was grounded on two separate bodies of law—state and federal. Thus, even if *Fain* does undercut the state ground, it does not undermine our holding in *Phelps Dodge* that federal law independently precluded Arizona from reserving mineral rights in exchanged lands that were nonmineral in character. That is what we held in *Phelps Dodge* when we decided that the mineral reservation was forbidden. In so doing we compared the language used in subsection (c) of the Grazing Act, which did require land to be mineral in character in order for the State to reserve mineral rights, with subsection (d), which did not. As we stated:

> It is noted, however, that the Grazing Act does distinguish between mineral reservations in equal value exchanges and reservations in equal acre exchanges. For the latter, 43 U.S.C. § 315g(c) ... contains a specific reference to lands "which are mineral in character." Conversely, 43 U.S.C. § 315g(d) states in relevant part that "either party to an exchange based upon equal value under this section may make reservations of minerals ..." While the language of subsection (c) is not phrased in terms of requiring the lands be mineral for a valid reservation in equal acre exchanges, a comparison of the language used in subsections (c) and (d) does support such an interpretation. Under subsection (c) (equal acre exchanges), the statutory authorization for the acceptance by the Secretary of the Interior of offered lands with a mineral reservation to the state is specifically provided for only for lands which are mineral in character. No such qualification is provided for equal value exchanges of land under subsection (d).

*Id.* at 1387. We, therefore, held that federal law did not allow Arizona to reserve its mineral rights in nonmineral lands. Consequently, even if state law allowed Arizona to reserve its mineral rights in the exchange (an equal acre exchange at that), the invalidity of the attempted reservation would not be affected. Interestingly enough, by the way, the Arizona Supreme Court did not say that state law truly permitted the transfer made here. It simply decided that for public policy reasons it would not give retroactive effect to a decision which tended to nullify certain exchanges. *Fain,* 790 P.2d at 251–53. Arizona's public policy cannot, however, serve to overcome the public policy of the United States. As we said in *Phelps Dodge,* "because the mineral reservation was void when made, the mineral rights would have already passed to the United States in the exchange. Consequently, even if the subsequent ratification of Grazing Act exchanges did include mineral reservations contained therein, such action would have come too late." 548 F.2d at 1388 n. 6 (citation omitted).

Second, Arizona argues that *Phelps Dodge* is inapposite because the procedural postures of the two cases differ significantly. In *Phelps Dodge,* the case was in federal court by virtue of Arizona's removal of a state-law quiet title action. *Id.* at 1385. In this case, UOP filed suit in federal court and made a federal law claim against the United States and Arizona, but Arizona is immune from suit under the Eleventh Amendment. That distinction, though, does not bear on the principle enunciated in *Phelps Dodge;* the reservation was, in fact, void if the land was not mineral in character on the date of the exchange. It only bears on irrelevant procedural niceties.

Third, Arizona argues that *Phelps Dodge* was wrongly decided because it misinterpreted the Grazing Act, and because it ignored a case where the Supreme Court had observed that the United States had effectively made a finding regarding the mineral character of certain land when it made a transfer of that land to a railroad. *See Burke v. Southern Pacific R.R. Co.*, 234 U.S. 669, 691, 34 S.Ct. 907, 916, 58 L.Ed. 1527 (1914). Arizona argues in vain, however, because we lack the authority to overturn an earlier decision of this court. *See United States v. Camper*, 66 F.3d 229, 232 (9th Cir.1995). Moreover, *Burke* is inapposite because the issue in *Phelps Dodge* did not involve a transfer by the United States; it involved a transfer to the United States. The same is true of this case.

■ For its part, the United States argues that the IBLA could not determine the mineral character of the subject lands because Arizona, and not the United States, held record title to the mineral rights in those lands. That, however, begs the question. It is true that the IBLA only retains jurisdiction to determine the validity of a claim to public land until a patent issues. *See Ideal Basic Indus., Inc. v. Morton*, 542 F.2d 1364, 1368 (9th Cir.1976) ("So long as the legal title remains in the Government, the Secretary has the power and duty upon proper notice and hearing to determine whether [a] claim is valid."); *United States v. Page*, 119 IBLA 12, 17–18 (1991) (the Secretary of the Interior has continuing jurisdiction with respect to public lands until patent issues, and he is not estopped from correcting or reversing erroneous decisions by subordinates or predecessors in interest); *Ed Bilderback*, 89 IBLA 263, 266–67 (1985) (same); *cf. Eddie S. Beroldo*, 123 IBLA 156, 158 (1992) (once public land is patented, title is transferred from the United States and the Department of the

Interior loses jurisdiction to adjudicate the relative rights of private parties to the land). That does not mean that the Department of Interior cannot determine, for its own purposes, whether it holds title to land which it has not deeded to others. *Cf. Felix F. Vigil*, 129 IBLA 345, 347–48 (1994) (determining title in light of claim of adverse possession); *Mable M. Farlow*, 30 IBLA 320, 325–26 (1977) (determining what land was conveyed under patent where land borders meandering watercourse).

The jurisdiction of the IBLA includes resolving disputes over "decisions rendered by Departmental officials relating to . . . the use and disposition of mineral resources in certain acquired lands of the United States. . . ." 43 C.F.R. § 4.1. The IBLA could not effectuate that end without also being able to determine, at least for agency purposes, whether land was, in fact, "acquired lands of the United States." Moreover, in light of *Phelps Dodge*, all the IBLA need do is perform a function for which it is well-suited: it need only decide if the lands in question were mineral or nonmineral in character at the time of the conveyances by Arizona. The *Phelps Dodge* principles will complete the syllogism which points toward a resolution of UOP's claim. The IBLA acted arbitrarily and capriciously when it refused to make that determination.[6]

C. *The Relief Granted By The District Court*

Although the district court correctly concluded that the IBLA acted arbitrarily and capriciously in affirming the BLM's rejection of the patent, the district court erred when it ordered "that the reservation of mineral rights in the exchanged lands . . . were void" and directed the United States to "conform its records to show that the mineral rights to the subject lands . . . are and have been in

---

**6.** The United States contends that UOP's challenge to Arizona's mineral rights in the subject land is barred by the six year statute of limitations in 28 U.S.C. § 2401(a). Section 2401(a) states in relevant part:

> every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues.

The six-year statute of limitations is applicable to actions brought under the APA. *See Shiny Rock Mining Corp. v. United States*, 906 F.2d 1362, 1364 (9th Cir.1990). However, UOP's challenge was not to the exchange itself, but rather to the proceedings regarding UOP's claim. The IBLA's procedural error occurred in 1993, and the amended complaint in this case was filed in 1994. Therefore, this case easily falls within the six-year statute of limitations of section 2401(a).

the United States since the conveyance of the land from the State of Arizona."

In so doing, the district court concluded that the administrative record supported a finding that the land was nonmineral in character and that Arizona's reservation of its mineral rights was void. In essence, the district court not only declared that the IBLA's decision not to decide was arbitrary and capricious, but also determined the underlying question about the mineral character of the land itself. However, on its review of the administrative decision the district court lacked the authority to decide issues that the administrative agency had arbitrarily and capriciously eschewed deciding. Because "a reviewing court is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry," the proper course of action where "the record before the agency does not support the relevant agency action" is to remand to the agency for additional investigation and explanation. *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598, 1607, 84 L.Ed.2d 643 (1985); *see also Abramowitz v. EPA*, 832 F.2d 1071, 1078 (9th Cir.1987) ("The general rule is that when an administrative agency has abused its discretion or exceeded its statutory authority, a court should remand the matter to the agency for further consideration.").

That rule is especially applicable here because the IBLA's error as to its duties precluded it from developing the record and, therefore, disabled it from properly deciding whether the claims were valid. Once the IBLA does take the proper approach it can at least determine whether the federal government will take the position that it owns the mineral interests and can act accordingly. Thus, as the United States concedes in its reply brief, the proper course is to remand so that the IBLA can further investigate, compile an administrative record, and make a determination.

### D. *Mandatory Joinder*

Because this matter must simply be remanded for an administrative finding regarding the mineral character of the subject land, Arizona need not be joined in this litigation. Fed.R.Civ.P. 19(b). In no event can it be said that Arizona has an interest in this particular piece of administrative review litigation, nor can its interest be impaired by it. *See Quileute Indian Tribe v. Babbitt*, 18 F.3d 1456, 1458 (9th Cir.1994); *Confederated Tribes of the Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1498 (9th Cir.1991); *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558–59 (9th Cir.1990). A decision of the IBLA to allow or not to allow UOP's claim will not have any binding effect upon Arizona's interests. It will simply be a conclusion by the United States about what it owns, if anything. Of course, if the United States does ultimately issue a patent, in later litigation it could turn out that the United States has not obtained the full value of the land because of the presence or absence of minerals. In the meantime, the United States, like any other landowner, can decide for itself what it has or does not have. In *Phelps Dodge* the United States apparently thought it did not own the mineral interests but Phelps Dodge, a mining company, wound up owning them by reason of a deed from the United States. Perhaps the presence of sovereigns on both sides will preclude a *binding court determination* before a conveyance is made. Still and all, that does not place the parties in a worse position than that of other parties where the purported holder of an interest in land either cannot or does not seek court action before he conveys his property.

Here the only difficulty is that if the United States decides that the land was not mineral in character at the time of the exchange but now is, the United States may someday have to deed its land at a price which seems very favorable to UOP. If it then turns out that the land *was* mineral in character at the time of the exchange, UOP will still own the land, although not the minerals. *See Swanson v. Babbitt*, 3 F.3d 1348, 1350 (9th Cir. 1993) ("A patented mining claim is one in which the government has passed its title to the claimant, giving him exclusive title to the locatable minerals, and, in most cases, the surface and all resources."); *United States v. Curtis–Nevada Mines, Inc.*, 611 F.2d 1277,

1281 & n. 3 (9th Cir.1980) (patent conveys full fee title to the land unless reservations are made in the patent or provided by law). Whether the price will then turn out to be favorable to UOP is anyone's guess. In any event, the condition of uncertainty as to some future decision in the courts will be no worse than it was when the United States issued a patent before the mineral adjudication in *Phelps Dodge*.

## CONCLUSION

IBLA declined to exercise its undoubted authority and duty to determine what the known mineral character of the land in question was at the time of its receipt from Arizona. As the district court found, that refusal was arbitrary and capricious. Having made that finding, the district court should have remanded the case to the IBLA so that it could apply its expertise to decide the issue. Neither the district court nor we are in any position to make that decision for the IBLA. Once the IBLA decision was vetted and found wanting, the proper remedy was to return the case to the agency for further development and action.

Thus, while we affirm the district court's determination that the IBLA did err, we vacate its judgment and remand to it with directions that it remand to the IBLA for further proceedings.

AFFIRMED in part, REVERSED in part, and REMANDED. The parties shall bear their own costs on appeal.