PIT RIVER HOME AND AGRICUL-
TURAL COOPERATIVE ASSO-
CIATION, Plaintiff,

v.

UNITED STATES of America, Defendant.

PIT RIVER TRIBAL COUNCIL, Cross–
Claimant–Counterclaim–Defendants–
Appellees,

v.

Bruce BABBITT,* Secretary of the. Interi-
or, United States of America, Cross–
Claim–Defendants–Counterclaim–Defen-
dants–Appellees,

v.

PIT RIVER HOME AND AGRICULTUR-
AL COOPERATIVE ASSOCIATION;
Erin Forrest, Cross–Claim–Defendants–
Counterclaimants–Appellants,

v.

PIT RIVER HOME AND AGRICULTUR-
AL COOPERATIVE ASSOCIATION,
Cross–Claim–Defendants–Appellants.

PIT RIVER TRIBAL COUNCIL, Cross–
Claim–Defendant–Appellant,

v.

PIT RIVER HOME AND AGRICULTUR-
AL COOPERATIVE ASSOCIATION;
Erin Forrest, Cross–Claim–Defendants–
Appellees.

Nos. 90–16589, 99–16590.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 13, 1992.

Decided July 21, 1994.

---

* Bruce Babbitt is substituted for his predecessor Manuel Lujan, Jr., Secretary of the Interior, pur-suant to Fed.R.App.P.Rule 43(c)(1).

Stephen V. Quesenberry, California Indian Legal Services, Oakland, CA, for plaintiff-appellee, cross-appellant.

Peter A. Appel, Law Clerk, and David C. Shilton, U.S. Dept. of Justice, Washington, DC, for cross-claim-defendants, counter-claim-defendants, appellees.

Joseph F. Preloznik and Bronson C. La-Follette, Madison, WI, for cross-claim-defendants, counterclaimants-appellants, cross-appellees.

Before: FLETCHER, POOLE, and BRUNETTI, Circuit Judges.

Opinion by Judge BRUNETTI.

BRUNETTI, Circuit Judge:

## OVERVIEW

This lawsuit involves a dispute over which group of Indians are the beneficial owners of a certain piece of property. In the late 1930s, the United States purchased property, called the XL Ranch, in trust for the Pit River Indian Tribe in anticipation of its designation as a recognized tribe. In the early 1940s, the United States granted occupancy rights in the XL Ranch under a revocable assignment to the Pit River Home and Agricultural Cooperative Association (the "Association"), a small group of Pit River Indians. The Association remained on the property until 1977, when the XL Ranch was turned over to the Bureau of Indian Affairs (the "BIA") to manage until the Secretary of the Interior (the "Secretary") determined the composition of the Pit River Indian Tribe

and hence the permanent beneficiary of the property. In 1987, the Secretary, after a multitude of court and administrative proceedings, designated the Pit River Tribal Council (the "Council") as the governing body of the Pit River Indian Tribe, the permanent beneficiary of the XL Ranch.

Although the litigation below was extensive and drawn out, the main issue that survives on appeal is the Association's request for recognition of its status as both a federally-recognized Indian tribe and as the true beneficiary of the XL Ranch. Subsidiary litigation involves the Council's common law trespass claims against a leader of the Association. We affirm the district court's dismissal of the parties' claims.

## FACTS AND PRIOR PROCEEDINGS

In 1938, the United States purchased approximately 9,000 acres of land in Modoc County, California—the XL Ranch—pursuant to the Indian Reorganization Act of 1934 (the "IRA"), 25 U.S.C. §§ 461–92. The property was taken by grant "in trust for such Bands of the Pit River Indians of the State of California as shall be designated by the Secretary of the Interior."

Historically, the Pit River Indians were not organized as one tribal organization with one set of tribal leaders. Instead, they were divided into eleven distinct and widely dispersed bands located in northeastern California. Each band had a land area in which it enjoyed a preferred status, but the bands cooperated with each other in some activities, including defending the whole Pit River area against outside raiders. At the time of the Secretary's acquisition, many of the Pit River Indians were landless, and the bands had not yet organized into one tribe.

In 1941, the Secretary issued a Revocable Assignment of the XL Ranch to the Association, a group of Pit River Indian families who organized in 1940 for the purpose of occupying the Ranch. The Revocable Assignment granted the Association use and occupancy rights in the Ranch "so long as it makes beneficial use thereof, unless this assignment shall be revoked by the Secretary of the Interior." The Assignment expressly stated

that it was to be "considered as temporary and revocable in the discretion of the Secretary of the Interior, and shall exist only until permanent use of the land has been determined and the determination of the Pit River Bands who are to enjoy the beneficial interests has been made by the said Secretary of the Interior."

The Association occupied the Ranch from 1941 to 1977. Two important additions were made to the Ranch during this time. First, the Department of the Interior acquired for the benefit of the Ranch an easement over other land which included the right to use and store water from the Lauer Reservoir. Unlike the original grant of the Ranch, this easement was taken by "the United States of America in trust for the Pit River Home and Agricultural Association." The parties dispute whose funds were used to purchase this easement. Second, the Secretary exchanged 13.85 acres of the Ranch land for property of the State of California. As was the case with the easement, the United States of America took title to this newly acquired land in trust for the Association.

The genesis of the current dispute was the Secretary's long delay in designating the bands or band members that were to comprise the Pit River Indian Tribe. Thus, when another group of Pit River Indians, the Council, organized and claimed entitlement to the Ranch, a clash was inevitable. It was not until the early 1970s, in response to a petition from the Association and the Council, that the Secretary finally began to address the issue of which bands should be designated collectively as the permanent beneficiary of the Ranch. The Secretary initiated designation proceedings before an Administrative Law Judge ("ALJ"), who, after two years, recommended allowing the Association members to retain their individual plots in the Ranch and to divide up the remainder into plots to be allocated among other groups of Pit River Indians. The Secretary rejected the ALJ's recommendation, however, finding that none of the Pit River Indian groups had established their entitlement to the property to the exclusion of other groups. Instead, the Secretary determined that "the whole Pit River Indian Tribe or Nation when it has

organized to include all elements of the Pit River Indians and has received Secretarial approval of the constitution adopted for this purpose should be designated the beneficial owner of the XL Ranch."

In the late 1970s, the Secretary designated the Council as governing body of the beneficiary and revoked the Association's rights in the Ranch. The Secretary, however, withdrew its approval of the Council's constitution in the early 1980s, placing the BIA in control of the Ranch. Finally, after various meetings, drafts, and two referenda (in which members of the Association participated), the Council ratified a constitution that met with the Secretary's approval. On December 3, 1987, the Secretary approved the new constitution and designated the Council as the governing body of the Pit River Indian Tribe, beneficiary of the Ranch.

Meanwhile, litigation had been proceeding in earnest. We focus only on the most relevant proceedings. The core litigation was the Association's suit against the United States and the Secretary of the Interior. Early in the litigation, the United States moved to dismiss the Association's complaint for, among other reasons, failure of the Association to join an indispensable party, the Council. The district court denied the motion to dismiss. *Pit River Home and Agric. Coop. Ass'n v. United States,* No. S–75–505 (E.D.Cal. filed Apr. 17, 1978). In its ruling, the court held that the Council was a necessary party within the meaning of Federal Rule of Civil Procedure 19(a). However, the court deferred its decision under Rule 19(b) on whether the Council was an indispensable party, since the record was insufficiently developed to determine whether the Council was a duly recognized tribe entitled to sovereign immunity.

In response to the district court's ruling, the Association added the Council as a defendant in its Fourth Amended Complaint. These proceedings ultimately were dismissed by the district court as both moot and unripe when the Secretary revoked its approval of the Council's constitution. *Pit River Home and Agric. Coop. Ass'n v. United States,* No. S–75–505 (E.D.Cal. filed Dec. 20, 1985). When the Association asserted anew its

claims to the Ranch in 1988 by way of answer and cross-counterclaim to a suit filed by the Council, it dropped the Council as defendant. The Association strenuously asserts in its briefs to us that it has no claims against the Council.

The Association claimed that it was a federally recognized Indian band with trust status, and that the United States and Secretary breached the government's trust obligation to it by revoking the Assignment of the Ranch. The Association's argument that it was the beneficial owner hinged on its assertions that it satisfied "the conditions" to the Assignment—namely a requirement of beneficial use—and that the government's revocation of the Assignment and refusal to defend the Association's rights to the property against the Council constituted a breach of the United States' fiduciary duty.

The Association sought: 1) judicial review of the Secretary's designation of the whole Tribe as the beneficiary of the Ranch, the Lauer Reservoir, and the 13.85 acre plot, and an order setting that designation aside; 2) a writ of mandate ordering the Secretary to designate the Association as the beneficiary; 3) a declaration that it was an Indian tribe with a governing body duly recognized by the Secretary; and 4) an accounting from the BIA of the funds received during the BIA's operation of the Ranch. The Council, in turn, brought various claims against the United States, the Secretary, and the Association; however, the only claim that survives on appeal is the Council's suit for common law trespass against Erin Forrest ("Forrest"), one of the leaders of the Association.

Before the district court could rule on the merits, the Association's attorney died. When the Association moved to substitute a new attorney, the Council and United States objected, alleging a lack of representation of Association members in the decision to choose the attorney. The Association answered that, as a federally recognized tribe, it had sovereign immunity and, thus, the court could not review its internal procedures. The court held a two-day evidentiary hearing on the matter on July 18, 1985, and concluded that the Association was not a federally recognized tribe. The court, however, allowed the Association to substitute counsel as an unincorporated organization under California law.

On November 15, 1988, the district court dismissed the Association's claims. Because the court found that the Association's claims were based on its status as a federally recognized tribe, which status had been rejected on July 18, 1985, and was now law of the case, the court lacked jurisdiction over the claims. The Association declined the court's suggestion that it amend its complaint to allege a cause of action not based on its tribal status. On September 5, 1990, the district court entered its final order. The court dismissed the Council's claim for common law trespass against Forrest, finding that the Council lacked the requisite possessory interest in the Ranch when Forrest allegedly trespassed on the land.

The Association appeals the district court's orders of July 18, 1985, and November 15, 1988, seeking reversal of the district court's determination that it was not a federally recognized tribe and a declaration that it is the beneficial owner of the Ranch, Lauer Reservoir, and 13.85 acre parcel. The Council appeals that part of the district court's final order dismissing its common law trespass claims against Forrest.

## DISCUSSION

I. *Claims of the Association*

A. Subject Matter Jurisdiction

1. 28 U.S.C. § 1362

█ For jurisdiction to be predicated on 28 U.S.C. § 1362, the plaintiff must be an Indian tribe or band with a governing body recognized by the Secretary.[1] The district court in its order dated July 18, 1985, relying on eleven exhibits and live testimony introduced by the Association and the voluminous

---

1. 28 U.S.C. § 1362 provides: "The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States."

administrative record, found that the Association was not a federally recognized tribe. The court used this finding in its order dated November 15, 1988, to dismiss all of the Association's claims premised on its alleged status as a federally recognized tribe. We review the factual findings of the district court for clear error and the legal findings de novo. *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir.1989).

The Ninth Circuit has identified a number of grounds upon which it has concluded that the Secretary has recognized a tribe or band: 1) federal statutes or treaties recognizing the tribe; 2) organization under the IRA or recognition under the BIA's regulations; and 3) historical recognition. *Price v. State of Hawaii*, 764 F.2d 623, 626–27 (9th Cir.1985), *cert. denied*, 474 U.S. 1055, 106 S.Ct. 793, 88 L.Ed.2d 771 (1986); *see also Native Village of Tyonek v. Puckett*, 957 F.2d 631, 634–35 (9th Cir.1992).

█ Even if we assume that the Association is a tribe or band, we find it has not been "duly recognized" by the Secretary. No statute or treaty identifies the Association as a federally recognized tribe. Nor were the Association's original and amended Articles of Association and By-laws adopted pursuant to § 476 of the IRA, the statute governing the formal organization of an Indian tribe, which requires ratification at a special election authorized and called by the Secretary. *See* 25 U.S.C. § 476 (1934 & 1970). The BIA officials who helped the Association organize expressly stated that the Association was not organized under the IRA.

Although, as the Association points out, the Assistant Secretary did approve the Association's original and amended Articles and By-laws, the approval was in the context of approving the Association's capacity to accept the Revocable Assignment of occupancy rights in the Ranch. Nothing indicates that the Assistant Secretary intended to approve the Articles and By-laws as the constitution of a federally recognized tribe.[2] When it acquired the Ranch, the United States believed the Pit River Indians were not ready for tribal organization.

Moreover, the Association itself was not treated as a group with a fixed identity, but as a tentative association. The Revocable Assignment stated that "in order to determine what groups of Indians ought to be designated as the beneficial owners of the property in question, it is necessary and proper that a tentative assignment of such lands to certain Pit River Indians be effected." The United States tentatively planned to expand the group that ultimately would have beneficial ownership of the Ranch from the thirteen families of the Association to approximately thirty families. That plan never materialized; in fact, the number of families occupying the Ranch under the Association decreased.

█ Nor can the Association claim recognition by the BIA under its current regula-

---

**2.** The fact that the language of the Association's original and amended Articles and By-laws did not include certain powers described in § 476 as vesting in an organized tribe supports our interpretation that they were not meant to be a tribal constitution. For instance, § 476 states that the tribal constitution adopted by the tribe "shall also vest in such tribe or its tribal council" the power to employ legal counsel, prevent encumbrance of tribal lands without the consent of the tribe, and negotiate with federal, state, and local governments. 25 U.S.C. § 476 (1934 & 1970). The Association's original and amended Articles and By-laws did not contain these powers, but appear to be merely a set of rules to govern collective stewardship over the Ranch.

The "powers" clause of the Association's original Articles of Association provided: "The powers of this association, which shall exist and be exercised only in legal pursuance of its purpose, shall be to acquire, hold, and dispose of property; to make and perform contracts; to borrow money and give liens on its property; to assign income; to engage in any business pursuant to its purpose; and such further powers as may be necessary to the conduct of its business." Plaintiff's Exhibit 1. The powers granted in the Amended Articles include: "The powers of this Association, which shall exist and be exercised only on legal pursuance of the objectives outlined in Article II, shall be to engage in any business pursuant to its purpose, subject to approval of the Area Director." Plaintiff's Exhibit 3. Article II provided: "The purpose of this Association shall be to improve the social and economic status of its members by individual and group activities." *Id.*

tions, 25 C.F.R. § 83 (1993).[3] The Association is not registered in the Federal Register as a recognized Indian tribe, nor does it fit the criteria set forth in the regulations. The regulations exclude from tribal status "associations, organizations, corporations or groups of any character, formed in recent times." 25 C.F.R. § 83.3(c). The Association was formed in 1940 in a cooperative effort to take possession of the Ranch. Both the ALJ and the district court found that the families who formed the Association had little, if any, unity prior to ratification of the Association's Articles and By-laws. Even after ratification, during its thirty-six year tenure on the Ranch, the Association failed to form a cohesive group. Evidence indicated that, due to the tactics of a dominant family, the Forrests, membership was not harmonious and the Association actually lost members.

The Association lacked historical unity. Evidence introduced at the administrative and district court levels showed that government officials, historians, and scholars loosely defined the "Pit River Indian Tribe" as the members of eleven bands located in a large geographical circle in northeastern California. In contrast, the "Association" originally was composed of thirteen families that came from two different areas of northeastern California. The Association, as such, has no historical unity. *See Native Village of Venetie I.R.A. Council v. Alaska*, 944 F.2d 548, 559 (9th Cir.1991) (group claiming tribal status must show they are "modern-day successors" to a historical sovereign entity that exercised political and social authority); 25 C.F.R. § 83.7(a)(5). As we recognized in *Price*, "[t]o allow any group of persons to 'bootstrap' themselves into formal 'tribal' status—thereby obtaining the federal economic and legal benefits attendant upon tribal status—simply because they are all members of a larger aboriginal ethnic body would be to ignore the concept of 'tribe' as a distinct sovereignty set apart by historical and ethnological boundaries." *Price*, 764 F.2d at 627; *see also, United States v. Wheeler*, 435 U.S. 313, 322–23, 98 S.Ct. 1079, 1085–86, 55

L.Ed.2d 303 (1978) (recognizing that current powers of Indian tribes are generally inherent powers which inured prior to the coming of the Europeans and were never extinguished).

■ We reject the Association's argument that the land could be taken in trust only for a federally recognized tribe, because "it would be unauthorized and illegal" under 25 U.S.C. § 465 for the Secretary to take title in trust for the Association unless it were a duly recognized tribe. Section 465 expressly provides that the Secretary may take title in the name of the United States in trust for an "Indian tribe or individual Indian." 25 U.S.C. § 465 (1934 & 1970). Section 479 defines "individual Indian" as including "all other persons of one-half or more Indian blood" and "tribe" as including "any Indian tribe, organized band ... or the Indians residing on one reservation." 25 U.S.C. § 479 (1970). The Association fits the last definition.

Accordingly, our review of the district court and administrative records brings us to the conclusion that the district court did not clearly err in its 1985 Order by finding that the Association is not a federally recognized tribe.

■ We also conclude that the district court did not abuse its discretion in refusing to reconsider its finding in light of the Association's proffer of additional evidence in 1988. *See Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 833–34 (9th Cir.1982) (whether district court should have considered additional evidence reviewed for abuse of discretion). "The 'law of the case' rule ordinarily precludes a court from re-examining an issue previously decided by the same court, or a higher appellate court, in the same case." *Id.* at 833. A decision on a factual or legal issue "must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court, unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision

---

**3.** The standard used prior to the regulations essentially mirrors the factors we rely on today.

*See Price,* 764 F.2d at 627–28.

of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice." *Id.* at 834 (quoting *White v. Murtha,* 377 F.2d 428, 431–32 (5th Cir.1967)).

The district court did not abuse its discretion. The new evidence proffered by the Association was not substantially different and could have been presented upon the district court's previous consideration in 1985. Nor was there an intervening change in the law which would warrant revisiting the issue. Finally, the district court's 1985 decision was not clearly erroneous and would not have worked a manifest injustice. The district court justifiably was guided by its belief that "[g]iven the age of this case and the desperate need for resolution of this controversy ... reopening the issue of the Association's status is inappropriate." *See* 18 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 4478 at 791–92 (1981 & Supp.1992).

■■■■ The Association's argument that the law of the case doctrine does not apply to interlocutory orders which are not immediately appealable is meritless. The law of the case doctrine is a discretionary one created to maintain consistency and avoid reconsideration, during the course of a single continuing lawsuit, of those decisions that are intended to put a matter to rest. Law of the case is not synonymous with preclusion by final judgment. *See* 18 Wright, Miller & Cooper, at 798 (1981), 603 (Supp.1993).

In any event, we note that the additional evidence proffered by the Association would not have established its existence as a federally recognized tribe. The additional evidence is either ambiguous or presents the views of people without authority to recognize an Indian tribe.

The district court did not clearly err by determining that the Association was not a federally recognized tribe. Accordingly, the district court correctly decided that it lacked jurisdiction under 28 U.S.C. § 1362.

**2. 28 U.S.C. §§ 1331, 1361**

The remaining sources of subject matter jurisdiction asserted by the Association are 28 U.S.C. §§ 1331 and 1361.[4] For this case to be within the purview of § 1331, "a right or immunity created by the Constitution or laws of the United States must be an essential element of plaintiffs' claim." *League to Save Lake Tahoe v. Tahoe Regional Planning Agency,* 507 F.2d 517, 519 (9th Cir. 1974), *cert. denied,* 420 U.S. 974, 95 S.Ct. 1398, 43 L.Ed.2d 654 (1975). Mandamus jurisdiction under § 1361 "exists when a plaintiff has a clear right to relief, a defendant has a clear duty to act and no other adequate remedy is available." *Piledrivers' Local Union No. 2375 v. Smith,* 695 F.2d 390, 392 (9th Cir.1982).

■■■■ The Association's claims for beneficial ownership of the Ranch and its additions, breach of fiduciary duty, and equitable estoppel are recognizable under §§ 1331 and 1361. These issues present questions of federal law. *See, e.g., County of Oneida v. Oneida Indian Nation (Oneida II),* 470 U.S. 226, 234–35, 105 S.Ct. 1245, 1251–52, 84 L.Ed.2d 169 (1985) (nature and source of the possessory rights of Indian tribes to aboriginal lands or lands conferred by treaty, statute, or other formal government action presents federal question); *Oneida Indian Nation v. County of Oneida (Oneida I),* 414 U.S. 661, 677–78, 94 S.Ct. 772, 782, 39 L.Ed.2d 73 (1974) (same); *Catawba Indian Tribe v. State of S.C.,* 865 F.2d 1444, 1450–51, 1456 (4th Cir.) (describing federal trust relationship over federal lands and jurisdiction under § 1331), *cert. denied,* 491 U.S. 906, 109 S.Ct. 3190, 105 L.Ed.2d 699 (1989); Cohen, Handbook of Indian Federal Law, 225–28, 308–11 (1982 ed.). Thus, even though we conclude that the district court did not have jurisdiction under § 1362 because the Association is not a federally recognized tribe, we cannot affirm the district court's dismissal of the case for lack of subject matter jurisdic-

---

**4.** Section 1331 provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

Section 1361 provides: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

tion.[5] We are, however, precluded from addressing the Association's claims and required to dismiss the case because we find that the Council is an indispensable party that cannot be sued without its consent based on principles of sovereign immunity.

**B. Indispensable Party—Federal Rule of Civil Procedure 19**

Under Federal Rule of Civil Procedure 19, we conduct a two-part analysis to determine whether an absent party must be joined in an action, thus requiring dismissal of the case if that party cannot be joined. As we stated in *Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir.1992) (citations and internal quotations omitted), *cert. denied*, —— U.S. ——, 113 S.Ct. 2993, 125 L.Ed.2d 688 (1993):

> We first ask whether the district court correctly determined that an absent party is necessary to the suit. If so, and if that party cannot be joined, we then must assess whether the district court correctly found the party indispensable so that in equity and good conscience the suit should be dismissed.

"The determination is heavily influenced by the facts and circumstances of each case."

**5.** We also note that we cannot affirm the district court's dismissal of the case on jurisdictional grounds because the United States has sovereign immunity and has not consented to be sued. Sections 1331 and 1361 do not waive the sovereign immunity of the United States. *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir.1983) (§ 1331 not a waiver), *cert. denied*, 466 U.S. 958, 104 S.Ct. 2168, 80 L.Ed.2d 552 (1984); *Smith v. Grimm*, 534 F.2d 1346, 1352 n. 9 (9th Cir.) (§ 1361 not a waiver), *cert. denied*, 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976). In addition, the Association's reliance on a "federal officer's suit" theory to defend against sovereign immunity fails, since the Secretary's original action in purchasing and temporarily assigning the Ranch was not ultra vires or in violation of IRA § 465, which authorizes the Secretary to acquire land for Indians. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689, 69 S.Ct. 1457, 1461, 93 L.Ed. 1628 (1949) (suits for relief against federal officers for specific violations that are outside the scope of statutory authority are not against the United States and are not precluded by sovereign immunity). However, despite the lack of statutory waiver and the failure of the "federal officer's suit" theory, we cannot conclude that the United States is immune from suit, since 5 U.S.C. § 702 waives sovereign immunity in non-monetary actions against the Unit-

*Bakia v. County of Los Angeles*, 687 F.2d 299, 301 (9th Cir.1982).

In this case, the Association's claims for beneficial ownership of the Ranch and its additions are against the government. Because the Council now possesses the land and has been declared beneficial owner by the Secretary, we must determine if we can address the merits of this action without the presence of the Council. For the reasons stated below, we find that we cannot.

**1. Necessary Party—Rule 19(a)**

 Early on in the litigation, the district court found that under Rule 19(a), the Council was a necessary party to this action.[6] *Pit River*, S–75–505 (E.D.Cal. filed Apr. 17, 1978). We review a district court's decision under Rule 19 for an abuse of discretion. *Hughes v. United States*, 953 F.2d 531, 541 (9th Cir.1992); *Northern Alaska Envtl. Ctr. v. Hodel*, 803 F.2d 466, 468 (9th Cir.1986). To the extent that the district court's determination whether a party's interest is impaired involves a question of law, we review de novo. *Hughes*, 953 F.2d at 541.

ed States. *United States v. Mitchell*, 463 U.S. 206, 227 n. 32, 103 S.Ct. 2961, 2973 n. 32, 77 L.Ed.2d 580 (1983) (through § 702, Congress enacted a general consent to suits for declaratory, injunctive, or mandamus relief); *Guerrero v. Stone*, 970 F.2d 626, 628 (9th Cir.1992) (in action for writ of mandamus under § 1331, subject matter jurisdiction premised on § 702 because of waiver of sovereign immunity); *Beller v. Middendorf*, 632 F.2d 788, 797 (9th Cir.1980) (sovereign immunity waived as to discharged navy enlistee's claims for nonmonetary relief).

**6.** Federal Rule of Civil Procedure 19(a) provides in part: "A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already existing parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." Fed.R.Civ.P. 19(a).

■ Based on Rule 19(a), we evaluate whether (1) complete relief is possible among the existing parties and (2) the absent party has a legally protected interest in the outcome of the litigation. *See Confederated Tribes of the Chehalis Indian Reservation v. Lujan,* 928 F.2d 1496, 1498 (9th Cir.1991). In this case, we find that both of these factors support our determination that the Council is a necessary party. First, even if the Association obtained its requested relief in this action, it would not have complete relief, since judgment against the government would not bind the Council, which could assert its right to possess the Ranch. *See id.* ("Judgment against the federal officials would not be binding on the Quinault Nation, which could continue to assert sovereign powers and management responsibilities over the reservation.").

Second, based on the Secretary's designation of the Tribe as the beneficial owner of the Ranch, the Council clearly has a legal interest in the litigation, which would be impaired by the disposition of this action without its presence. *See Shermoen,* 982 F.2d at 1317 ("finding that a party is necessary to the action is predicated only on that party having a *claim* to an interest") (emphasis in original); *McClendon v. United States,* 885 F.2d 627, 633 (9th Cir.1989) (tribe is necessary party to action seeking to enforce a lease agreement signed by the tribe). The Council also has an interest in preserving its sovereign immunity, which we will discuss in relation to the indispensable party issue. *See Shermoen,* 982 F.2d at 1317 ("absent tribes have an interest in preserving their own sovereign immunity, with its concomitant right not to have [their] legal duties judicially determined without consent") (internal quotations omitted). A judgment for the Association finding a fiduciary duty owed to the Association by the government would subject the government to additional multiple or inconsistent obligations. *See Confederated Tribes,* 928 F.2d at 1498 ("Even partial success by the plaintiffs could subject both the Quinault Nation and the federal government to substantial risk of multiple or inconsistent legal obligations."). Considering the conflicting claims of the Association and the Council, the district court did not abuse its discretion by finding that the Council is a necessary party to this action.

2. Indispensable Party—Rule 19(b)

■ Although the district court did not rule on whether the Council was indispensable to this action, we can consider this issue. *See Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 111, 88 S.Ct. 733, 738–39, 19 L.Ed.2d 936 (1968) ("When necessary . . . a court of appeals should, on its own initiative, take steps to protect the absent party, who of course had no opportunity to plead and prove his interest below."); *CP Nat'l Corp. v. Bonneville Power Admin.,* 928 F.2d 905, 911–12 (9th Cir.1991) ("The absence of 'necessary' parties may be raised by reviewing courts *sua sponte.* The issue can be properly raised at any stage in the proceeding.") (citations omitted); *Boles v. Greeneville Hous. Auth.,* 468 F.2d 476, 479 & n. 4 (6th Cir.1972) (court raised indispensable party question on its own motion, even though Rule 19 was neither litigated at the trial level nor briefed on appeal). In this case, the district court deferred a finding on the issue, and the parties have briefed it on appeal; thus, it is clearly proper for us to rule on the matter.

■ After determining that a party is necessary, a court should find whether that party can be joined and, if not, whether that party is indispensable to the action, rendering dismissal of the case necessary. *See Confederated Tribes,* 928 F.2d at 1499 (parties agree that tribe cannot be joined, so next step is to determine whether tribe is an indispensable party requiring that court dismiss action). We must first determine whether the Council has sovereign immunity which prevents it from being joined in this action. If the Council has sovereign immunity, we must next decide whether we are required to dismiss this case because the Council is an indispensable party. Based on the following analysis, we conclude that the Council has sovereign immunity and is an indispensable party, and we therefore dismiss this case.

### a. Sovereign Immunity

Federally recognized Indian tribes enjoy sovereign immunity from suit. As the Supreme Court has stated, "Indian tribes are 'domestic dependent nations' that exercise inherent sovereign authority over their members and territories. Suits against Indian tribes are thus barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation." *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Ok.,* 498 U.S. 505, 509, 111 S.Ct. 905, 909, 112 L.Ed.2d 1112 (1991) (although tribe consents to court's jurisdiction to claims brought by it, that consent does not waive sovereign immunity for counterclaims brought against it) (citations omitted); *see also Pan Am. Co. v. Sycuan Band of Mission Indians,* 884 F.2d 416, 418 (9th Cir.1989) ("Absent congressional or tribal consent to suit, state and federal courts have no jurisdiction over Indian tribes; only consent gives the courts the jurisdictional authority to adjudicate claims raised by or against tribal defendants."). "Sovereign immunity involves a right which courts have no choice, in the absence of a waiver, but to recognize." *California v. Quechan Tribe of Indians,* 595 F.2d 1153, 1155 (9th Cir.1979).

The Association does not contest that the Council is the federally recognized governing body of the Pit River Indian Tribe, and hence enjoys sovereign immunity. Thus, unless the Council has waived its sovereign immunity and expressly consented to suit, the Council cannot be joined as a party to this action.

The Association contends that the Council waived its sovereign immunity by filing suit regarding the ownership of the Ranch. On June 20, 1986, the Council filed a complaint for injunctive relief and damages against the United States, certain federal officials, and Forrest. On March 1, 1988, the Council amended its complaint against the United States seeking to quiet title to the 13.85 acre plot, and later added the Association as a defendant on May 16, 1988. In addition, the Council sought damages against Forrest based on various common law trespass claims, and brought a claim against the Association for a constructive trust over the 13.85 acre plot, seeking reformation of the deed to reflect the Council's ownership. The only claim appealed by the Council is the district court's decision that the Council cannot prevail in its common law trespass claim against Forrest. Although the Council's previous claims are not before us on appeal, the Association argues that by instituting these actions without entering a special appearance to preserve its jurisdictional claim to immunity, the Council waived its sovereign immunity.

We reject the Association's argument. First, the Council's failure to appear specially does not waive its sovereign immunity, since sovereign immunity is a jurisdictional defect that may be asserted by the parties at any time or by the court *sua sponte. See Quechan Tribe,* 595 F.2d at 1154–55 & n. 1 (sovereign immunity goes to jurisdiction of court and "may be asserted at any stage in the proceedings, either by the parties or by the court"). Any waiver of immunity must be unequivocally expressed. *Id.* at 1155; *see also Quileute Indian Tribe v. Babbitt,* 18 F.3d 1456, 1460 (9th Cir.1994) (Indian tribe's voluntary participation in administrative proceedings "is not the express and unequivocal waiver of sovereign immunity that we require in this circuit"); *Pan Am.,* 884 F.2d at 419–20 (arbitration clause in agreement does not waive sovereign immunity unless unequivocal and express); *Snow v. Quinault Indian Nation,* 709 F.2d 1319, 1322–23 (9th Cir.1983) (acceptance of service of process by an officer of the tribe does not affect the sovereign immunity of the tribe), *cert. denied,* 467 U.S. 1214, 104 S.Ct. 2655, 81 L.Ed.2d 362 (1984).

Second, the fact that the Council brought certain claims in the district court that are no longer at issue on appeal does not amount to a waiver of sovereign immunity. The Supreme Court has expressly held that "a tribe does not waive its sovereign immunity from actions that could not otherwise be brought against it merely because those actions were pleaded in a counterclaim to an action filed by the tribe." *Potawatomi Tribe,* 498 U.S. at 509, 111 S.Ct. at 909 (citing *United States v. United States Fidelity & Guar. Co.,* 309 U.S. 506, 513, 60 S.Ct. 653,

657, 84 L.Ed. 894 (1940)). The Association contends that this holding does not apply in this case because it has asserted no counterclaims against the Council. That argument, however, is meritless. Merely because it once had certain claims before the district court, the Council did not waive its sovereign immunity as to claims brought by the Association against the government, since those claims could not otherwise be brought against it. The Council's bringing the trespass claim or seeking review of the district court's dismissal of the claim does not constitute a waiver of its immunity from claims brought by the Association regarding the beneficial ownership of the Ranch. The Council is immune from suit and cannot be joined as a party to this action.

### b. Indispensable Party

■ Since the Council cannot be joined, we must determine under Rule 19(b) whether this action can proceed in the absence of the Council.[7] To determine whether a party is indispensable, Rule 19(b) requires that we consider certain factors: (1) to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. Fed. R.Civ.P. 19(b). We will address each of these factors.

### (1) Prejudice

■ The Council will clearly suffer prejudice if the Association is successful in its claim for beneficial ownership of the Ranch. *See Confederated Tribes*, 928 F.2d at 1499 (prejudice stems from the same legal interests making someone a necessary party to the action). As in *Confederated Tribes*, no partial or compromise remedy exists that will

not prejudice the Council, since a finding that the Association has rights to the beneficial ownership of the Ranch or that the government owes certain duties to the Association will prejudice the Council's right to govern the Tribe, which is the designated beneficial owner of the land. *Id.* (tribe prejudiced when judgment in favor of plaintiff would "alter the [tribe's] existing authority to govern the reservation").

In addition, the United States cannot adequately represent the interests of the Council. This case involves intertribal conflicts that could subject the United States to inconsistent duties or obligations. We have held that the United States cannot adequately represent an absent tribe, when it may face competing interests. *See Quileute*, 18 F.3d at 1460 ("In disputes involving intertribal conflicts, the United States cannot properly represent any of the tribes without compromising its trust obligations owed to all tribes."); *Shermoen*, 982 F.2d at 1318 ("it is unlikely that the government could sufficiently represent the competing interests and divergent concerns of the tribes, for the government must also act in keeping with its role and obligations as trustee"); *Confederated Tribes*, 928 F.2d at 1500 ("United States cannot adequately represent the [tribe's] interest without compromising the trust obligations owed to the plaintiff tribes"); *Makah Indian Tribe v. Verity*, 910 F.2d 555, 560 (9th Cir.1990) (the United States cannot properly represent any tribe when there exists the possibility for intertribal conflicts). The Council's right to govern the Tribe, the beneficial owner of the Ranch, will clearly be prejudiced if this action proceeds in its absence, and the United States cannot adequately represent the Council's interests when faced with the competing claims of the Association.

### (2) Shaping of Relief or Adequate Remedy

We also find that there is no relief or remedy that would lessen the prejudice the Council would suffer if we decided this action in their absence. We have already held that

---

7. Rule 19(b) provides in part: "If a person [described in Rule 19(a)(1)–(2)] cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Fed.R.Civ.P. 19(b).

the district court did not err in determining that the Association is not a federally recognized Indian tribe. Thus, the only issues that remain are the Association's claims that it is the beneficial owner of the land and that the government has fiduciary obligations to the Association. Any decision adverse to the Tribe would prejudice the Council in its governance of the Ranch. Since intervention would require a waiver of sovereign immunity, we cannot require the Council to intervene to minimize the potential prejudice, since intervention would require a waiver of sovereign immunity. *See Confederated Tribes*, 928 F.2d at 1500 (citing *Makah Indian Tribe*, 910 F.2d at 560 ("the ability to intervene if it requires waiver of immunity is not a factor that lessens prejudice")).

### (3) Adequate Judgment in Absence of Person

There is no adequate judgment we can provide the Association in the absence of the Council. We have already decided, without the presence of the Council, that the Association is not a federally recognized Indian tribe. The Association's other claims all encompass its assertion that it has competing rights with the Council to the beneficial ownership of the Ranch. We cannot address these claims without prejudicing the rights of the Council to govern the Tribe, which the Secretary has designated as the beneficial owner of the Ranch.[8] *See Shermoen*, 982 F.2d at 1320 ("The relief sought in this case [a declaration that a Congressional act which extinguished the plaintiff tribe's interest in land and conferred the exclusive right to the

land to another tribe was unconstitutional] would prevent the absent tribes from exercising sovereignty over the reservations allotted to them by Congress. It is difficult to imagine a more 'intolerable burden on governmental functions.' ").

### (4) Adequate Remedy for Plaintiff

■ There is no alternative forum where the Association can seek declaratory and injunctive relief regarding the beneficial ownership of the Ranch.[9] This fact, however, does not prevent us from finding the Council to be indispensable and from dismissing the case. We have held that the "lack of an alternative forum does not automatically prevent dismissal of a suit." *Makah Indian Tribe*, 910 F.2d at 560; *see also Confederated Tribes*, 928 F.2d at 1500 (plaintiff's suit dismissed despite lack of alternative forum for plaintiff tribe to bring action for injunctive relief against the Secretary).

In this case, the Council's interest in maintaining its sovereign immunity outweighs the Association's interest in litigating its claim. *See Quileute*, 18 F.3d at 1460 (plaintiffs' interest in litigating their claim did not outweigh tribe's interest in maintaining its sovereign immunity, despite lack of alternative forum); *Confederated Tribes*, 928 F.2d at 1500 ("Courts have recognized that a plaintiff's interest in litigating a claim may be outweighed by a tribe's interest in maintaining its sovereign immunity."); *see also Enterprise Mgmt. Consultants v. United States*, 883 F.2d 890, 894 (10th Cir.1989) (" 'dismissal

---

**8.** We note that the Association would be unlikely to prevail on its claims against the government for breach of fiduciary duty and equitable estoppel. The Secretary's temporary assignment of the Ranch to the Association appears proper. IRA § 465 gives the Secretary the authorization

> in his discretion, to acquire, through purchase, relinquishment, gift, exchange, or assignment, any interest in lands ... including trust or otherwise restricted allotments ... for the purpose of providing land for Indians.
>
> Title to any lands or rights acquired pursuant to ... this title shall be taken in the name of the United States in trust for the Indian Tribe or individual Indian for which the land is acquired....

This section does not restrict the Secretary from giving land to Indians on temporary assignment.

Furthermore, because the Secretary's act seems authorized under § 465, the Association is unlikely to meet the stringent requirements for establishing equitable estoppel against the government. *See Wagner v. Director, Fed. Emergency Mgmt. Agency*, 847 F.2d 515, 519 (9th Cir.1988) ("A party seeking to raise estoppel against the government must establish affirmative misconduct going beyond mere negligence; even then, estoppel will only apply where the government's wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage by imposition of the liability.") (internal quotations omitted).

**9.** We note that the Association possibly could pursue a claim for monetary relief under the Tucker Act, 28 U.S.C. § 1346.

turns on the fact that society has consciously opted to shield Indian tribes from suit without congressional or tribal consent' ") (quoting *Wichita & Affiliated Tribes v. Hodel,* 788 F.2d 765, 777 (D.C.Cir.1986)). As we stated in *Shermoen,*

> [w]e realize that our decision effectively denies appellants a forum in which to have some of their grievances heard. This case serves as one more illustration, however, that "Congress' authority over Indian matters is extraordinarily broad, and the role of courts in adjusting relations between and among tribes and their members correspondingly restrained."

*Shermoen,* 982 F.2d at 1320–21 (quoting *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 72, 98 S.Ct. 1670, 1684, 56 L.Ed.2d 106 (1978)). Although the Association does not have an alternative forum in which it may seek injunctive and declaratory relief against the government, we dismiss the Association's claims with prejudice, since the Council is an indispensable party under Rule 19(b).

## II. *Claims of the Council*

Jurisdiction for the Council's common law trespass claim against Erin Forrest is based on 28 U.S.C. §§ 1331 and 1362. *Oneida II,* 470 U.S. at 235, 105 S.Ct. at 1252; *see also Chilkat Indian Village v. Johnson,* 870 F.2d 1469, 1473 (9th Cir.1989); *Gila River Indian Community v. Henningson, Durham & Richardson,* 626 F.2d 708, 714 (9th Cir.1980) (indirectly affirming federal jurisdiction over common law possessory interest claims to Indian trust lands), *cert. denied,* 451 U.S. 911, 101 S.Ct. 1983, 68 L.Ed.2d 301 (1981).

█ The district court dismissed the Council's claim against Forrest on a Rule 12(b)(6) motion, finding that the Council lacked possessory interest in the Ranch during the period of Forrest's alleged trespass— November 12, 1976, to February 18, 1981. Our standard of review is de novo. *Kruso v. International Tel. & Tel. Corp.,* 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied,* 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990).

To analyze the possessory rights of the Council, we must review the process of its recognition by the Secretary. On February 3, 1975, the Secretary declared its intent to designate as beneficiary of the Ranch "the whole Pit River Tribe or Nation when it has organized to include all elements of the Pit River Indians and has received Secretarial approval of the constitution adopted for this purpose." (1975 Order). On November 12, 1976, the Acting Deputy Commissioner on Indian Affairs approved the Council's 1964 constitution and bylaws as a "provisional constitution and bylaws by which the Tribe shall be governed until a more adequate document is adopted by the voters and approved by the Secretary; provided that this approval shall not be construed as authorizing any action that would be contrary to Federal law." (Provisional Order). The Provisional Order provided that approval of a proposed amendment to the 1964 constitution, which dealt with the Council's authority to manage the Ranch, was withheld because· of improper voting procedures. In an order dated December 18, 1976, the Sacramento Area Director of the BIA appears to have approved, although the language is somewhat ambiguous, the amended 1964 constitution and appointed the Tribe as beneficial owner of the Ranch (1976 Order). The 1976 Order stated: "In that the Commissioner, under delegated authority, has on November 12, 1976, approved a provisional constitution, and such governing document has on December 18, 1976, been appropriately amended as required by the Commissioner, and pursuant to the authority delegated to me ... I hereby designate the Pit River Indian Tribe as the beneficial owner." On July 31, 1981, however, the Secretary withdrew approval of what it labeled "the provisional constitution" and "suspend[ed] the December 18, 1976, designation by the Sacramento Area Director of the beneficiary" (Clarification Order). On April 13, 1982, the Assistant Secretary issued a re-clarification of the Secretary's Clarification Order (Re–Clarification Order).

The Council makes two arguments in support of the Tribe's right of possession from November 12, 1976, to February 18, 1981. First, it argues that the Provisional Order withheld approval only until the Council properly amended its constitution, which it did and which was recognized in the 1976

Order. The Council points to a paragraph in a letter accompanying the Provisional Order: "In that the tribe lacks authority to manage tribal lands under the existing form [of the constitution] ... we are withholding the issuance of such designation [of beneficial ownership] until the existing constitution and bylaws is (sic) validly amended...."

Second, it argues that the Clarification Order only withdrew the Secretary's recognition of the Council as the governing body of the Tribe. The Tribe never lost its possessory rights in the Ranch and the trespass claims vested in the Tribe. Once the Secretary re-approved the Council's governing powers on December 3, 1987, the Council was given the power to pursue the Tribe's rights on the Tribe's behalf, which it did on March 1, 1988, when it amended the complaint against Forrest.

▇▇ The district court rejected the Council's first argument, finding that the Provisional Order and 1976 Order created a conditional right only and that the Tribe thus had only a contingent possessory interest in the Ranch. Although acknowledging that the language of the 1976 Order was unequivocal, the district court stated:

> [The approval] was clearly predicated upon a tribal constitution which had not been finally approved by the Secretary. Read in context of the totality of the proceedings, and especially in light of the requirement that Secretarial approval of an *appropriate* constitution precede final designation of a beneficial owner, the Secretary's 1976 designation of the Pit River Tribe, as organized under the provisional constitution, must be viewed as conditional as well.

(emphasis added).

We agree. The language of the Secretary in the Clarification Order supports this interpretation. Throughout its Clarification Order, the Secretary labeled the Council's 1964 constitution "provisional." The Secretary reviewed the 1964 constitution and found it did not conform to the requirement in the Secretary's 1975 Order that the tribe be comprised of "all elements of the Pit River Indian" nation. The Secretary found that the "constitution of the tribe which has been ap-proved as a provisional document does not adequately guarantee due process and equal protection for all elements of Pit River Indians," and "is not adequate to describe the organization ... and membership" of the Tribe. The Secretary specifically stated that the constitution failed to establish that all members of the Association were Pit River Indians and had various existing interests in the Ranch. Because the 1964 constitution did not conform to the requirements in the 1975 Order, the Secretary could not approve it. Hence, the Council cannot use the 1976 Order to support the Tribe's claim to beneficial ownership of the Ranch.

▇▇ The Council's second argument—that the Secretary did not intend to suspend the designation of the Tribe as beneficiary, only to suspend the Council as the governing body—has less merit. As explained above, the Secretary's problem with the constitution was not just with the governing provisions of the Council. It was also with the organization, or composition, of the Tribe. Despite the Council's argument to the contrary, the Assistant Secretary's Re–Clarification Order did not confirm the status of all of the Pit River Indians as beneficiaries. The Assistant Secretary merely confirmed the fact there is "*a* historical Pit River Tribe." The composition of the Tribe for purposes of beneficial ownership was still uncertain at that time.

▇▇ The Council argues that allowing the "[g]overnment to divest an historical Indian tribe of property interests in trust land with the mere stroke of a pen, despite its having previously confirmed such interests in formal decisions and orders" has due process overtones. Since the Council's constitution was not approved until December 3, 1987, the Tribe's rights to the property could not have been "divested" when the Secretary withdrew approval on July 31, 1981. We agree that at first glance it appears "unfair" for the Secretary to designate the Tribe as beneficiary in an order that appears unconditional and then suspend that designation. However, the 1975 Order of the Secretary informed the Council that two requirements were necessary for designation of the Tribe as beneficia-

ry: one, organization to include all elements of the Pit River Indians; and two, secretarial approval of a constitution adopted for this purpose. It would be ironic if we were to rely on due process grounds to overturn the Secretary's determination that it could suspend the designation, when the Secretary suspended the designation on those same grounds.

## CONCLUSION

We affirm the district court's order dismissing the claims of the Association. The Association is not a federally recognized tribe and cannot rely on 28 U.S.C. § 1362 for subject matter jurisdiction. Moreover, its claims are barred because the Council is an indispensable party to this action and cannot be sued based on principles of sovereign immunity.

We also affirm the district court's order dismissing the Pit River Tribal Council's common law trespass claims against Erin Forrest. The Council lacked possessory interest in the XL Ranch at times it alleges trespass by Forrest.[10]

We agree with the sentiment expressed by the district court when it said that "[a]fter 15 long years of fruitless litigation, this action has finally come to an end. I am hopeful that the parties will take this experience, put it behind them, and get on with their lives."

AFFIRMED.

---

10. Because of our resolution of this appeal, we do not reach the Council's claims that the Association lacked standing both to represent the inter-

ests of its members and to assert claims in its own right.