86 F.3d 1163
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
SENTRY LIFE INSURANCE COMPANY, Plaintiff-Appellant,
v.
Alan ROBERTS, M.D.; Alan Roberts, M.D., Inc., Defendants-Appellees.
 No. 93-56636.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 6, 1996.*
Decided May 20, 1996.
 
 1
 Before: REINHARDT and LEAVY, Circuit Judges, and KING,** District Judge.
 
 
 2
 MEMORANDUM***
 
 OVERVIEW
 
 3
 Appellant, Sentry Life Insurance (Sentry), brought this action seeking to recover benefits paid to appellee, Dr. Roberts, under disability insurance plans. The district court entered partial summary judgment in favor of Sentry on its alter ego theory of liability. On appeal of the partial summary judgment we reversed and remanded. After trial on the alter ego issue, the district court entered judgment in favor of Dr. Roberts, concluding that the law of the case precluded consideration of certain issues. Sentry timely appeals. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.
 
 FACTS AND PRIOR PROCEEDINGS
 
 4
 Dr. Roberts is an orthopedic surgeon, and is president, sole shareholder and director, and an employee of Alan Roberts, M.D., Inc., a California professional corporation. Roberts was insured under two disability income insurance plans (the plans) which Sentry offered to eligible members of the American Medical Association. The plans offered a $3,000 total monthly indemnity in the event of total disability. If the insured later returned to work, the plans provided that he would continue to receive the monthly indemnity "less 50% of compensation earned in the performance" of his or her duties.
 
 
 5
 Roberts was totally disabled and received benefits under the plans from December 14, 1979, until August 3, 1980. On August 4, 1980, Roberts returned to work part-time. Roberts, Inc. did not pay Roberts a salary in August and September of 1980, but did pay him $19,205.93 in October as compensation for work performed in all three months. Upon learning of this method of compensation, Sentry notified Roberts that he would be paid the $3,000 monthly indemnity for both August and September because he did not "actually ... receive any money" in those months. Roberts did not receive an indemnity for October because fifty percent of the reported income for that month ($8,103) exceeded the $3,000 indemnity.
 
 
 6
 On January 8, 1981, Roberts called a special meeting of the Board of Directors of Roberts, Inc. At the meeting the following resolution was adopted:
 
 
 7
 RESOLVED: That until such time as Dr. Alan Roberts has regained his full health and is capable of working on a full-time basis, he will not be paid his salary on a monthly basis but instead his salary will accumulate and be paid on October 31 of each year, the end of the corporate accounting year.
 
 
 8
 In 1981, 1982, 1983, and 1984, in every month except October, Roberts reported to Sentry that he had received no salary from Roberts, Inc. and Sentry paid him the $3,000 monthly indemnity.
 
 
 9
 Sometime in 1984 Sentry discovered a declaration filed by Roberts in his divorce action in which he stated that he was earning $33,333 per month. Sentry then filed this action against both Dr. Roberts and Roberts, Inc. seeking declaratory relief and damages for breach of contract, breach of covenant of good faith and fair dealing, fraud and concealment, money paid by mistake, and money paid and received. Roberts counterclaimed for breach of implied covenant of good faith and fair dealing, abuse of process, and fraud.
 
 
 10
 In May 1985, Sentry filed a motion for partial summary judgment. Sentry sought summary judgment on Roberts' counterclaims and also asked the court to summarily adjudicate that Roberts, Inc. was the alter ego of Dr. Roberts for the limited purpose of considering the monthly earnings of Roberts, Inc. to be the earnings of Dr. Roberts under the plans. The district court granted the motion as against Roberts' counterclaims, found that Roberts, Inc. was the alter ego of Dr. Roberts for purposes of imputing earnings, and ordered Dr. Roberts to refund all monthly benefits payments paid after December 31, 1980.
 
 
 11
 Sentry's claims of fraud and tortious bad faith were tried to the court in April 1988. Following conclusion of Sentry's case, the district court granted Roberts' motion for involuntary dismissal under Fed.Rule Civ.P. 41(b), finding that neither defendant had committed any act of fraud or bad faith.
 
 
 12
 After judgment was entered, Roberts and Roberts, Inc. appealed the grant of partial summary judgment in favor of Sentry on the alter ego issue. Sentry did not appeal the portions of the judgment dismissing its tort claims. In our memorandum disposition we stated (footnotes included):
 
 
 13
 The only issue on appeal is whether the court properly granted partial summary judgment in favor of Sentry on the alter ego issue. We note that there is no question raised as to the meaning of the clause "compensation earned" in the disability policy.[3] Sentry interprets the clause to mean compensation that is actually paid, rather than compensation which has been earned but remains unpaid.[4]
 
 
 14
 We reversed the grant of summary judgment on the alter ego issue and remanded holding that "in order to prevail on an alter ego theory, Sentry must prove that Roberts passed the resolution in bad faith," and finding that "a genuine issue of fact exists as to whether Roberts passed the annual salary resolution in order to qualify for disability benefits and, even if he did, whether it constituted bad faith."
 
 
 15
 After holding a trial on the alter ego issue, the district court entered judgment in favor of Roberts and Roberts, Inc. on August 30, 1993, holding that "the adoption of the 1981 salary resolution did not constitute bad faith on the part of either Dr. Roberts or Roberts, Inc." The district court found that the salary resolution had been "adopted to obtain disability benefits but not for the purpose of defrauding Sentry." The district court also held that the law of the case precluded Sentry from raising the issue of the meaning of "compensation earned." Sentry filed a motion under Fed.Rule Civ.P. 52(b) to amend the findings of fact, conclusions of law, and judgment on September 15, 1993, which the district court denied on October 15, 1993. On November 10, 1993, Sentry timely filed its notice of appeal.
 
 STANDARD OF REVIEW
 
 16
 A district court's interpretation of state law is reviewed under the same independent de novo standard as are questions of federal law. Salve Regina College v. Russell, 499 U.S. 225, 231 (1991); National Union Fire Ins. Co. v. Showa Shipping Co., 47 F.3d 316, 322 (9th Cir.1995). The trial court's application of the law of the case doctrine is reviewed for abuse of discretion. Milgard Tempering, Inc. v. Selas Corp. of Am., 902 F.2d 703, 714 (9th Cir.1990).
 
 ANALYSIS
 
 17
 1. Standard of "Bad Faith" for Purposes of Determining Alter Ego. Sentry argues that the district court erroneously held that "bad faith" in California alter ego cases has the same meaning as "bad faith" in California tortious breach of the implied covenant of good faith and fair dealing cases, and thus, erroneously concluded that Roberts had not acted in bad faith for purposes of determining alter ego. According to Sentry, the inequity of allowing Dr. Roberts to retain the disability payments is sufficient to invoke the alter ego doctrine. Under California law, "it is not sufficient to merely show that a creditor will remain unsatisfied if the corporate veil is not pierced, and thus set up such an unhappy circumstance as proof of an 'inequitable result.' In almost every instance where a plaintiff has attempted to invoke the [alter ego] doctrine he is an unsatisfied creditor. The purpose of the doctrine is not to protect every unsatisfied creditor, but rather to afford him protection where some conduct amounting to bad faith makes it inequitable, ... for the equitable owner of a corporation to hide behind its corporate veil." Associated Vendors, Inc. v. Oakland Meat Co., 210 Cal.App.2d 825, 842, 26 Cal.Rptr. 806 (1962) (emphasis added). While it may seem inequitable for Roberts to receive disability benefits while Roberts, Inc. was earning hundreds of thousands of dollars, Sentry had told Roberts it would pay him benefits in the months he received no salary. Thus, the district court did not err in finding that Roberts, Inc.'s adoption of the salary resolution was not in bad faith nor in concluding that there was no bad faith for the purposes of invoking the alter ego doctrine.
 
 
 18
 2. Application of Law of the Case Doctrine. Sentry argues that the district court erred when it held that law of the case barred Sentry from litigating the meaning of "compensation earned" on remand. Sentry asserts that it did not stipulate or concede before the Ninth Circuit that the term "compensation earned" as used in its policy meant that compensation was earned in the only months Dr. Roberts was actually paid.
 
 
 19
 Under the doctrine of law of the case, a decision on a legal issue, whether by a higher court or the same court, is not open to relitigation in subsequent proceedings in the same case. Maag v. Wessler, 993 F.2d 718, 720 n. 2 (9th Cir.1993); Milgard Tempering, 902 F.2d at 715. In order for the doctrine to apply, "the issue in question must have been 'decided explicitly or by necessary implication in [the] previous disposition.' " Milgard Tempering, 902 F.2d at 715 (quoting Liberty Mutual Ins. Co. v. E.E.O.C., 691 F.2d 438, 441 (9th Cir.1982)). "The law of the case doctrine is a discretionary one created to maintain consistency and avoid reconsideration, during the course of a single continuing lawsuit, of those decisions that are intended to put a matter to rest." Pit River Home and Agric. Coop. Ass'n v. U.S., 30 F.3d 1088, 1097 (9th Cir.1994).
 
 
 20
 In this instance, we necessarily had to put to rest the possible argument that the earnings of Roberts, Inc. were "compensation earned" under the policy, before determining the applicability of the alter ego doctrine. Thus, our determinations that "there is no question raised as to the meaning of the clause 'compensation earned' ... Sentry interprets the clause to mean compensation that is actually paid, rather than compensation which has been earned but remains unpaid" were properly treated as law of the case by the district court.
 
 CONCLUSION
 
 21
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [3]
 The plans provided that in the event the insured returned to work, Sentry would "pay the amount of the Monthly Indemnity stated in the Schedule applicable to the Insured reduced by 50% of the compensation earned in the performance of such duties."
 
 
 [4]
 Roberts argues that the court improperly "reformed" the policy when it held that the "compensation earned" by the insured, Dr. Roberts, included the net monthly income of an uninsured third party, Roberts, Inc. Reformation, however, is an equitable remedy used to correct or amend a written contract where, through mistake coupled with actual or equitable fraud, the writing does not conform to the party's actual agreement. It is undisputed that the parties understood that only the insured's monthly income would be counted for the purposes of computing benefits. The question is whether the alter ego doctrine may be used to treat the income of the corporation as that of Dr. Roberts